780 P.2d 458

Antonio B. BALLESTEROS, individually, Luz E. Sunseri, individually and as surviving mother of Carlos Rafael Montano, deceased, and Carlos A. Montano, surviving son of Carlos Rafael Montano, deceased, By and Through his Guardian ad Litem, Gloria Ruiz, Plaintiffs/Appellants,

v.

The STATE of Arizona, a body politic, Defendant/Appellee.

No. 2 CA–CV 89–0028.

Court of Appeals of Arizona, Division 2, Department A.

May 18, 1989.

Review Denied Oct. 17, 1989.

**626**

Davis & Eppstein, P.C. by Thomas J. Davis, Tucson, for plaintiff/appellant Ballesteros.

Zlaket & Zlaket, P.C. by Thomas A. Zlaket, Tucson, for plaintiff/appellant Sunseri.

Haralson, Kinerk & Morey, P.C. by Gregory G. Wasley, Tucson, for plaintiff/appellant Montano.

Gallagher & Kennedy, P.A. by Kevin E. O'Malley and Judith A. Morse, Phoenix, for defendant/appellee.

## OPINION

HOWARD, Judge.

This is an appeal from a defense verdict in a personal injury case. The determinative issue is whether the trial court erred in refusing to instruct the jury on the duty of care imposed on the state in relation to its highways. We hold that it did and reverse.

### I. FACTS

On April 26, 1984, Antonio B. Ballesteros was in a car being driven by Carlos Montano which skidded on an icy curve on State Highway 666 north of Morenci and rolled down a steep slope. Montano was killed and Ballesteros was injured. Witnesses testified that the roadway at the curve was covered with ice and snow.

There had been three previous accidents at the same curve, all three of them involving automobiles which left the roadway and two which involved skidding on ice.

There was conflicting evidence as to the safeness of the highway at the site of the accident. Plaintiff's accident reconstruction and traffic engineering expert testified (1) that despite the posted speed limit of 30 miles per hour, the maximum safe speed for the curve under dry conditions was 22.5 miles per hour; (2) that the curve was a spiral or horseshoe curve and deceptive to northbound motorists because of the mountain embankment on the left-hand side of the highway; (3) that the roadway was not safely signed because there should have been a turn sign or horseshoe curve sign with a 20–mile–per–hour advisory speed plate just prior to the accident location; (4) that the ice sign was improperly placed and should have been located so that a northbound motorist would see it when starting into the curve; (5) that a guardrail was required at the accident curve, and (6) that the state should have salted or sanded the roadway.

At the trial, the court refused to give the following instruction requested by the plaintiffs:

The STATE OF ARIZONA has a duty to keep its highways reasonably safe for travel. That duty includes the duty to place proper barriers, railings, guards and/or warning signs at dangerous places on a highway when necessary for the safety of motorists traveling on the highway.

The trial court also refused to instruct the jury relative to the state's duty with regard to ice and snow on its highways.

The trial court gave no instructions regarding the state's duty to the traveling public with regard to its highways. It did instruct the jury that "the standard of care imposed upon the State of Arizona is that of a reasonably careful person" and "[n]egligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as a reasonably careful person would act under the circumstances."

### II. CONTENTIONS OF THE PARTIES

The plaintiffs contend that it was reversible error not to instruct the jury on the state's duty in the operation, design and maintenance of its highways. The defendant contends that it was not necessary to submit the issue of duty to the jury because it is a question for the trial court,

and that the trial court need not instruct on every refinement suggested by counsel and that the instructions as a whole were adequate.

## III. DISCUSSION

■ The basic elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach.

■ The issue of duty is resolved by the court as a matter of law. *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985). A duty is a matter of " 'the relation between individuals which imposes upon one a legal obligation for the benefit of another.' " *Id.* at 355, 706 P.2d at 367, quoting W. Prosser and W. Keeton, The Law of Torts, § 53 at 356 (5th ed. 1984). This does not mean, however, that once having found the duty and submitted the issue of negligence to the jury, the trial court is not required to tell the jury the nature of the legal obligation imposed on the defendant for the plaintiff's safety. As far as its highways are concerned, the state has a duty to keep its highways reasonably safe for travel and that duty includes the duty to place proper barriers, railing, guards and/or warning signs at dangerous places on the highway when necessary for the traveler's safety. *Bach v. State,* 152 Ariz. 145, 730 P.2d 854 (1987). The jury cannot possibly decide whether or not the defendant has breached its duty if it does not know the specific standard of care involved once the duty has been found by the court. As was said in *Markowitz:*

> If there is a duty, then the law requires that the defendant conform to a standard of care. In negligence cases that is usually "reasonable care under the circumstances," though it may differ, depending on the relationship. Thus, doctors may be required to have and exercise the care and skill usually had and used by other doctors, land owners may be required to take reasonable precautions to make the premises safe for invi-

> tees or to warn licensees of known dangers, etc. All of these standards carry with them an implicit requirement that defendant act reasonably in light of the known and forseeable risks....

146 Ariz. at 356–57, 706 P.2d at 368–69.

■ The relationship here created a standard of care different from the usual "reasonable care under the circumstances," and failing to inform the jury of that standard of care in this case completely destroyed the plaintiffs' case.

As part of its standard of care, certain conduct may be required relative to icy conditions on the roadway. This standard of conduct is discussed in *Walker v. County of Coconino,* 12 Ariz.App. 547, 473 P.2d 472 (1970):

> Thus, if a roadway should suddenly and without fault of the governmental body, come *by any means* into a condition dangerous to travel, the governmental body is liable for damages occasioned thereby if the governmental body fails to act in a reasonably prudent manner under the circumstances. In the case of ice, however, to determine whether the acts of the governmental body are reasonable, due regard must be given to whether the icy condition is general or isolated, whether the governmental body has actual notice, or notice implied or presumed by lapse of time of the condition, and whether a reasonable time for correcting the condition has elapsed after such notice. [citation omitted]

> An isolated patch of ice on a downhill curve, obstructed from view by a rise in the road, which covers the entire width of the roadway and extends for approximately 100 yards is without question a "condition dangerous to travel." We agree that Coconino County may well have a duty to either remove, sand, or warn an unsuspecting public of this isolated patch of ice, but the existence of such a duty depends upon whether the county had actual or constructive notice of the ice, and an opportunity after such notice to take remedial measures....

12 Ariz.App. at 550, 473 P.2d at 475. (Emphasis in original.)

If the facts warrant it, the court must, upon a proper request, instruct the jury on the standard of care required by the state relative to ice and snow on its highways.

The plaintiffs have argued that two other instructions given by the trial court on other matters were erroneous. In view of our disposition we need not discuss their propriety.

Reversed.

LIVERMORE, P.J., and HATHAWAY, J., concur.