883 P.2d 466

Susan **GOSS**, surviving spouse of decedent Brian Dennis Goss, individually, and on behalf of all individuals entitled to recover under A.R.S. § 12–611, et seq., Plaintiffs/Appellants,

v.

**CITY OF GLOBE**, Defendant/Appellee.

No. 2 CA–CV 94–0025.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 22, 1994.

**230**

Phillips & Lyon, P.A. by Henry G. Hester, Phoenix, and Coben & Ryan by Stephen C. Ryan, Scottsdale, for plaintiffs/appellants.

Junker, Doherty, LaMar & Lucas, P.C. by Steven A. LaMar and Robert Grasso, Jr., Phoenix, for defendant/appellee.

## OPINION

ESPINOSA, Presiding Judge.

Brian Goss fell off of a low wall into a drainage ditch, was rendered quadriplegic, and allegedly died because of respiratory complications related to the paralysis. His wife brought a wrongful death action against the City of Globe (the City) on behalf of herself and others entitled to recover under A.R.S. § 12–611, et seq. The issue raised in this appeal is whether the trial court correctly granted summary judgment in favor of the City after concluding that it is absolutely immune under title 12, chapter 7, article 2 of the Arizona Revised Statutes, (Actions Against Public Entities or Employees Act), and specifically A.R.S. § 12–820.01. That issue, as involving interpretation of the statute, is a question of law, *see Walls v. Arizona Department of Public Safety*, 170 Ariz. 591, 826 P.2d 1217 (App.1991), which we review *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966).

Goss fell backwards from a sitting position into a drainage ditch adjacent to a retaining wall abutting Cottonwood Street. The retaining wall was part of a roadway construction project in the 1930's and was built to separate pedestrians from the drainage ditch. According to the affidavit of the City Manager attached to the motion for summary judgment, the wall, located on the northwest side of Cottonwood Street at the intersection of Cottonwood and Sutherland, was erected sometime between 1935 and 1938. The plaintiffs alleged in their complaint that the City "was negligent in the creation, design, construction, maintenance, and upkeep with respect to the low concrete wall...." Relying on the opinion of a traffic engineering expert, the plaintiffs contend on appeal, without citation to the record, as they did below, that the location was hazardous because there were no sidewalks on Cottonwood Street nor a pedestrian railing separating the drainage ditch from the roadway. They also

claim that the depth of the ditch was hidden from view by tree overgrowth.[1]

Although the trial court did not specify the ground upon which it granted the City's motion, it appears to have been based primarily on § 12–820.01 which provides in pertinent part:

A. A public entity shall not be liable for acts and omissions of its employees constituting:

\* \* \* \* \* \*

2. The exercise of an administrative function involving the determination of *fundamental governmental policy.*

B. The determination of a *fundamental governmental policy involves the exercise of discretion* and shall include, but is not limited to:

1. A determination of whether to seek or whether to provide the resources necessary for:

(a) The purchase of equipment,

(b) The construction or maintenance of facilities,

(c) The hiring of personnel, or

(d) The provision of governmental services.

2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

(Emphasis added.) The word "facilities" is not defined in the Act. Its dictionary definition is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function." *Webster's Third New International Dictionary,* 812–13 (1971). This definition is broad enough to include the retaining wall, sidewalks or guardrails. Maintenance is defined in the statute as "the establishment or continuation in existence of facilities, highways, roads, streets, bridges or rights-of-way by a public entity and does not

mean or refer to ordinary repair or upkeep." A.R.S. § 12–820(3).

The City contends that whether to allocate funds for the construction of sidewalks or a guardrail is a discretionary decision regarding fundamental governmental policy for which it enjoys absolute immunity. As a general proposition, we agree. However, we do not believe a decision was actually made here. In the City Manager's affidavit, he described how the City government made decisions regarding allocation of funds for such construction, which had not changed since the wall was erected. A careful reading of that affidavit shows that before Brian Goss's accident, no actual decision not to spend funds on guardrails or sidewalks had ever been made. The most that can be said is that a decision was made by default. By not allocating funds for the construction of safeguards, the City "effectively," as the manager puts it, decided *not* to make the allocation for the guardrail. As for the sidewalks for pedestrian traffic, the manager stated, "A decision has not been made by the Mayor, City Council and/or City Manager. . . . "

We do not believe that § 12–820.01 was meant to immunize a public entity from such non-decisions but only from actual decisions and the affirmative exercise of discretion with respect to fundamental governmental policy. *Cf. Evenstad v. State,* 178 Ariz. 578, 875 P.2d 811 (App.1993) (where plaintiff alleged that motor vehicle division had failed to promulgate rules, court pointed out that it had promulgated some and was absolutely immune for such discretionary actions). We agree with the dissenting opinion in *Department of Transportation v. Neilson,* 419 So.2d 1071, 1080 (Fla.1982), that before immunity attaches there must be some form of "considered" decision, that is, "one which consciously balances risks and advantages." *See also Baldwin v. State,* 6 Cal.3d 424, 491 P.2d 1121, 99 Cal.Rptr. 145 (1972).[2] The record here

---

1. As the City points out, the plaintiffs have failed to comply with Ariz.R.Civ.App.P. 13(a)(4), 17B A.R.S., because they have not cited to the record to support their factual assertions. Even if we were to disregard those assertions, *Bird v. State,* 170 Ariz. 20, 821 P.2d 287 (App.1991), the result here would be the same. The City does not

dispute that these factual assertions were the basis of the plaintiffs' liability claim.

2. In *Baldwin* the supreme court of California held that immunity for the initial design of a roadway is not perpetual since changed circumstances may make what was initially safe, dan-

simply does not show that any type of affirmative decision was made.

■ We reject the City's argument that the failure to act may be construed as an "omission" covered by § 12–820.01(A). Given the active language "exercise of discretion" and "determination" we believe that "omission," as it relates to the rest of the statute, means that in making its discretionary decision the public entity chooses not to do something. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* (5th ed. 1984) § 56 at 373–74 (recognizing difficulty of distinguishing acts from omissions and active from passive conduct). We also reject the City's related policy argument that the purpose of broadly construing the term omission is to avoid exposing a government entity to a wide spectrum of potential liability, given the vastness of its responsibilities. This ignores both the prefatory statement to the Act and the history preceding it.

In 1963, in *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963), our supreme court abolished the doctrine of sovereign immunity and reaffirmed that decision nineteen years later in *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982). The Act followed, and represents an attempt to balance the need to retain immunity with respect to certain matters with the recognition stated in *Stone* that the traditional doctrine was based "on grounds of antiquity and inertia." 93 Ariz. at 388, 381 P.2d at 109. In enacting article 2, the legislature stated its purpose and intent as follows:

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the legislature recognizes that, while a private entrepreneur may readily be held liable for negligence within the chosen scope of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be

the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state....

Historical and Statutory Notes, 1984 Ariz. Sess.Laws ch. 285, § 1. *See also City of Tucson v. Fahringer,* 164 Ariz. 599, 600 n. 4, 795 P.2d 819, 820 n. 4 (1990). Thus, the statute is to be viewed as carving out a narrow exception to the general rule that the common law applies. As our supreme court pointed out in *Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990), the legislature rejected language that would have deleted references to the common law. "Accordingly, the right to sue the state is not a statutory grant, as is the case in several other states; rather, it is a common law rule in Arizona that the government is liable for its tortious conduct and immunity is the exception." *Id.* at 431, 788 P.2d at 1182. *Accord Ryan v. State,* 134 Ariz. at 311, 656 P.2d at 600 ("[W]e propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy."). *See also* James L. Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities,* 28 Ariz.L.Rev. 49 (1986). The Act is designed to give the government the room it needs to govern, allowing judgment and discretion to be exercised freely without concern that decisions will be second-guessed by judges or juries. *See Johnson v. State,* 69 Cal.2d 782, 795 n. 8, 447 P.2d 352, 361 n. 8, 73 Cal.Rptr. 240, 249 n. 8 (1968) (reason for governmental immunity is "to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government ... [if] such a policy decision, consciously balancing risks and advantages, took place."). We do not believe it was meant to apply where no actual decision-making has occurred.

■ Thus, with respect to the claims based on failure to construct the sidewalks or guardrails, the common law applies. At common law, public entities have a duty to main-

gerous. The question then becomes whether the public entity had notice of the dangerous condition. All of these issues raise questions of fact

precluding summary judgment in the instant case.

tain public highways, roads and streets in a reasonably safe condition. *Dunham v. Pima County,* 161 Ariz. 304, 778 P.2d 1200 (1989); *Barnes v. City of Tucson,* 157 Ariz. 566, 760 P.2d 566 (1988); *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984); *Lippincott v. State,* 162 Ariz. 171, 781 P.2d 1012 (App.1989); *Ballesteros v. State,* 161 Ariz. 625, 780 P.2d 458 (App.1989). " 'The standard of care imposed upon a municipality is that of an ordinarily prudent man.' " *Beach v. City of Phoenix,* 136 Ariz. 601, 603, 667 P.2d 1316, 1318 (1983) (quoting *City of Phoenix v. Clem,* 28 Ariz. 315, 327, 237 P. 168, 172 (1925)). That duty carries with it " 'an implicit requirement that the defendant act reasonably in light of the known and foreseeable risks.' " *Ballesteros,* 161 Ariz. at 627, 780 P.2d at 460 (quoting *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 356–57, 706 P.2d 364, 368–69 (1985)). As Division One of this court found in *Bach v. State,* 152 Ariz. 145, 730 P.2d 854 (1986), the duty extends beyond the roadway surface which, in that case, included construction of a nearby exposed culvert. The *Bach* court relied in part on *City of Phoenix v. Mayfield,* 41 Ariz. 537, 548, 20 P.2d 296, 300 (1933), in which our supreme court, quoting *Johnson v. State,* 186 A.D. 389, 391, 173 N.Y.S. 701, 703 (1919), held that a city has a duty " 'to erect railings or barriers along the highway at places where they are necessary to make the highway safe and convenient for travelers in the use of ordinary care.' " *See also Ballesteros,* 161 Ariz. at 627, 780 P.2d at 460 (state's duty to keep its highways reasonably safe for travel "includes the duty to place proper barriers, railing, guards and/or warning signs at dangerous places on the highway when necessary for the traveler's safety."). The duty also extends to sidewalks. *Beach, supra.* Whether the City breached its duty, however, is a matter to be determined and which is not before us.

The question whether the City enjoys absolute immunity for failing to allocate funds to build sidewalks or guardrails relates to only one aspect of the allegations in the plaintiffs' complaint. The plaintiffs alleged negligence in the "creation, design, construction, maintenance, and upkeep" of the wall. With respect to the initial design of the wall

or any plan for maintenance as defined in A.R.S. § 12–820(3), the City does not enjoy absolute immunity. Section 12–820.03 provides a public entity with an affirmative defense regarding the "plan or design for construction or maintenance of or improvement to highways, roads, streets, bridges, or rights-of-way . . . ." That there is a defense to liability is, of course, distinguishable from immunity from suit provided under § 12–820.01.

The City also has a duty of repair and upkeep for which it does not enjoy immunity. *See* A.R.S. § 12–820(3) (definition of maintenance expressly excludes "ordinary repair or upkeep"). The plaintiffs contended below that the City negligently allowed the overgrowth around the retaining wall to obscure the view to the ditch and thereby created a hazard. This is tantamount to a claim of negligent upkeep for which, on this record, the City was not entitled to summary judgment.

The trial court's granting of summary judgment in favor of the City is reversed and this matter is remanded for further proceedings.

DRUKE, C.J., and HATHAWAY, J., concur.