920 P.2d 11

**James Patrick GALATI,
Plaintiff–Appellant,**

v.

**LAKE HAVASU CITY, a publicly incorporated entity, Defendant–Appellee.**

**No. 1 CA–CV 94–0397.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 8, 1996.

Review Denied July 2, 1996.

terial fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). Pursuant to former Rule 11(a)(3), Arizona Rules of Civil Appellate Procedure, the parties limited the record on appeal, and we have limited our review to that record.

On November 7, 1991, Galati was involved in a single vehicle, rollover accident on McCulloch Boulevard in Lake Havasu City. Galati lost control of his vehicle after he traveled over a dip in the road and failed to negotiate a curve. For purposes of the motion for summary judgment, the City did not contest that the design of the road at the site of the accident was substandard.

Galati filed suit against the City, claiming that the City was negligent in the design and maintenance of McCulloch Boulevard, and that this negligence caused his accident. The City moved for summary judgment, claiming that its decision not to redesign or allocate funds for reconstruction of McCulloch Boulevard was either a legislative or an executive policy decision for which the City was absolutely immune. The City further argued that its warning and speed limit signs at the site of the accident were sufficient, and that there was no evidence that the roadway was improperly maintained. The trial court granted the City's motion, and Galati appealed.

Law Offices of Keith S. Knochel by Keith S. Knochel, Bullhead City, and Ulrich & Kessler, P.C. by Paul G. Ulrich, Phoenix, for Plaintiff–Appellant.

Doyle, Appel & Shook by Marc Appel, Phoenix, for Defendant–Appellee.

## OPINION

CONTRERAS, Presiding Judge.

On this appeal, we consider whether the trial court properly granted summary judgment on the basis that appellee Lake Havasu City ("City") was immune from suit regarding appellant James Patrick Galati's ("Galati") claim that his single vehicle accident resulted from the unreasonably hazardous design of a city street. We hold that the City was not entitled to absolute legislative or administrative immunity in this case. We therefore reverse.

## FACTS AND PROCEDURAL HISTORY

On review of the trial court's grant of summary judgment, we view the facts favorably to Galati, the party against whom judgment was granted, and determine *"de novo* whether there are any genuine issues of ma-

## DISCUSSION

*1. Immunity*

In 1982, the Arizona Supreme Court held that, under Arizona common law, a governmental entity is liable for its negligence except as to legislative acts, judicial acts, and executive policy decisions. *Ryan v. State,* 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982). The court encouraged the legislature to develop the area of immunities. *Id.* In response, the legislature adopted the "Actions Against Public Entities or Public Employees Act" ("Act"). Laws 1984, Ch. 285 (codified at A.R.S. §§ 12–820 through –823). *See City of Tucson v. Fahringer,* 164 Ariz. 599, 795 P.2d 819 (1990); *Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990); *Evenstad v. State,* 178 Ariz. 578, 875 P.2d 811 (App.1993); James L.

Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities*, 28 Ariz.L.Rev. 49 (1986). The Act "reaffirmed the now well settled common law notion that governmental immunity is the exception and liability the rule ...", *Fahringer*, 164 Ariz. at 600 n. 4, 795 P.2d at 820 n. 4, and "codified various common law doctrines that conferred absolute and qualified immunity on various public entities and employees." *Id.* at 600, 795 P.2d at 820. *See also Pritchard*, 163 Ariz. at 431, 788 P.2d at 1182.

■ The City argues that it is immune from suit regarding its funding and roadway construction priorities, and, therefore, it cannot be sued for substandard or dangerous roadway design when correction of such a design requires allocation of its limited financial resources to a particular construction project. In particular, the City claims statutory legislative immunity and immunity for "[t]he exercise of an administrative function involving the determination of fundamental governmental policy." A.R.S. § 12–820.01(A). Determining whether the City is entitled to such immunity is a question of law for the court. *Carroll v. Robinson*, 178 Ariz. 453, 456, 874 P.2d 1010, 1013 (App.1994).

### a. Legislative Immunity

The City argues that street design and funding decisions are legislative acts entitled to absolute immunity. In this regard, the City points to the affidavit of its city manager, Larry Price, who stated that the City's street funding decisions are "an administrative function involving the determination of the City's fundamental policy regarding the construction or maintenance of its roadway facilities for which administrative discretion is required." The City does not point to any evidence that it made an affirmative decision not to fund a street improvement project for McCulloch Boulevard, but does argue that the City's prioritization of road construction projects makes its failure to fund the project the same as a decision not to fund. We disagree.

■ We have found no Arizona case directly on point.[1] The immunity statute, however, provides immunity for the City's "*exercise* of a ... legislative function." A.R.S. § 12–820.01(A)(1) (emphasis added). We interpret the term "exercise" to require action, not the absence of action. Arizona cases determining what is a legislative act require an actual decision or affirmative act, not a failure to make a decision. *Saggio v. Connelly*, 147 Ariz. 240, 241, 709 P.2d 874, 875 (1985). A decision to fund street construction or improvements is a legislative act. *See Wennerstrom v. City of Mesa*, 169 Ariz. 485, 821 P.2d 146 (1991) (bond election for street improvements a legislative act; council's approval of specific project was not). We hold, however, that the absence of a decision to fund a street improvement project is not the exercise of a legislative function entitled to immunity under A.R.S. section 12–820.01(A)(1). *Cf. Goss v. City of Globe*, 180 Ariz. 229, 231, 883 P.2d 466, 468 (App.1994) (decision by default not entitled to immunity as an "exercise of an administrative function involving the determination of fundamental governmental policy" under A.R.S. section 12–820.01(A)(2)).

■ Even if the City had made an affirmative decision not to fund roadway improvements to McCulloch Boulevard, however, the City would not be entitled to immunity for street design that was substandard when constructed. If a City decides to act, it must do so non-negligently. *Austin v. City of Scottsdale*, 140 Ariz. 579, 581–82, 684 P.2d 151, 153–54 (1984); *Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Ariz. 260, 267, 564 P.2d 1227, 1234 (1977). The record is not clear when the street was built, if it was substandard at that time, if the City approved a substandard design, or if the substandard design made the street irremediably and unreasonably dangerous. Although the City has an affirmative defense if the street design was "prepared in conformance with generally accepted engineering or design standards in effect at the time of the

---

1. This is not a case where immunity for statements made during a legislative session applies. *See Sanchez v. Coxon*, 175 Ariz. 93, 854 P.2d 126

(1993) (absolute legislative immunity for allegedly libelous statement council member made during town council meeting).

preparation of the plan or design," [2] the City must warn the public of any unreasonably dangerous hazards. A.R.S. § 12–820.03; *Goss,* 180 Ariz. at 233, 883 P.2d at 470. We find, therefore, that the City's claimed legislative immunity does not support the trial court's entry of summary judgment.

#### b. *Immunity for Policy Decisions*

The City also argues that the decisions how to maintain and whether to upgrade its roads are discretionary policy decisions entitled to absolute immunity, even where, as here, the "decision" is made by default. The relevant statute provides:

> A. A public entity shall not be liable for acts and omissions of its employees constituting:
>
> \* \* \* \* \* \*
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.
>
> B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:
>
> 1. A determination of whether to seek or whether to provide the resources necessary for:
>
> \* \* \* \* \* \*
>
> (b) The construction or maintenance of facilities.
>
> 2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel. . . .

A.R.S. § 12–820.01(B). The City argues that it is immune from liability for any failure to remedy the roadway's dangerous design because any such failure was based on the City's determinations not to provide the resources necessary to upgrade the road and to spend its limited resources on other projects.

▮ Not all administrative decisions are entitled to immunity. In *Chamberlain v. Mathis,* 151 Ariz. 551, 729 P.2d 905 (1986), the Arizona Supreme Court stated that common law governmental immunity did not at-

tach to "ministerial" acts, concluding that absolute immunity should be applied narrowly. *Id.* at 556, 558, 729 P.2d at 910, 912. In *Evenstad,* this court distinguished between discretionary governmental actions involving fundamental governmental policy, to which absolute immunity applies, and ministerial actions implementing that policy, to which immunity does not apply. 178 Ariz. at 583–84, 875 P.2d at 816–17 (distinguishing the discretionary policy decisions involved in promulgating administrative rules and regulations, and the ministerial implementation of those rules). *Cf. Carroll,* 178 Ariz. at 456–58, 874 P.2d at 1013–15 (state and its employees entitled to qualified immunity for discretionary decision to revoke day care license).

In *Bird v. State,* 170 Ariz. 20, 821 P.2d 287 (App.1991), however, this court held that the legislature in A.R.S. section 12–820.01(B) defined certain actions to be discretionary decisions protected by absolute immunity. *Id.* at 23, 821 P.2d at 290 (state entitled to absolute immunity from liability for licensing and regulation of professions and occupations). The City argues, therefore, that A.R.S. section 12–820.01(B) limits the court's discretion, and this court must find that the City's decision not to spend its resources on the redesign or construction of McCulloch Boulevard is protected by absolute immunity. Although we agree the City is immune from a suit to force it to spend its resources on the reconstruction of McCulloch Boulevard, we conclude that this immunity does not apply to Galati's negligence claims.

▮ In *Goss,* Division Two of this court determined that absolute immunity did not apply either to the city's failure to make an express discretionary decision or to its negligent upkeep of its property. In that case, the plaintiffs' decedent fell into a drainage ditch from a retaining wall along a city street that had been built as part of a roadway construction project in the 1930s. The plaintiffs argued that the wall was negligently designed, built, and maintained, and that the city negligently maintained the area near the wall by allowing tree overgrowth to obscure

---

**2.** Galati's expert testified that the road design was substandard when constructed. The City

did not refute this, but argued it was immaterial to the City's motions.

the depth of the ditch. The city argued that it was absolutely immune from liability for these claims under A.R.S. section 12–820.01 because its decisions regarding maintenance and not to allocate funds for guardrails and sidewalk construction were discretionary decisions involving fundamental governmental policy. Division Two held that, to qualify for absolute immunity under A.R.S. section 12–820.01, a decision not to allocate funds must be more than a decision by default:

> We do not believe that § 12–820.01 was meant to immunize a public entity from such non-decisions but only from actual decisions and the affirmative exercise of discretion with respect to fundamental governmental policy.

*Goss,* 180 Ariz. at 231, 883 P.2d at 468. Because the evidence in *Goss* showed only a decision by default, the court found no immunity. The court then held that absolute immunity did not apply to negligent repair or upkeep of city property, because the statutory definition of "maintenance" excluded "ordinary repair or upkeep." *Id.* at 233, 883 P.2d at 470.

 In its brief and at oral argument, the City emphatically argued that *Goss* was wrongly decided because the *Goss* court adopted the dissent in *Department of Transportation v. Neilson,* 419 So.2d 1071 (Fla. 1982), despite the fact that our supreme court in *Ryan* adopted the *Neilson* majority.[3] We disagree. In citing to *Neilson,* the *Ryan* court made it quite clear that it was doing so "to illustrate how other courts have sought a solution" to this issue. 134 Ariz. at 311, 656 P.2d at 600. "Illustration" of a position is a far cry from "adoption" of it. We find the rationale in *Goss* persuasive. *Ryan* endorsed the defense of immunity "only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy." *Ryan,* 134 Ariz. at 311, 656 P.2d at 600. Where no actual decision is made, there is no

governmental function or statement of public policy at issue.

More importantly, however, we decline to construe the immunity statutes to give a city absolute immunity for all actions affected by its spending priorities. Such an interpretation would render meaningless specific limitations the legislature placed on governmental immunity. The legislature specifically excluded ordinary road repair and upkeep from the definition of "maintenance" as used in the immunity statutes. A.R.S. § 12–820.03. In addition, the legislature recognized an affirmative defense for substandard street design only where the design conformed to generally accepted engineering and design standards when constructed, and even then the City must warn the public of unreasonably dangerous road hazards. A.R.S. § 12–820.03. If a city could circumvent these limitations simply by choosing to spend its resources on something other than street repair and warning signs, or by choosing a less expensive but substandard road design, immunity would be the rule and liability the exception, an approach the legislature rejected in its statement of legislative intent when enacting the immunity statutes. Laws 1984, Ch. 285 § 1; *Fahringer,* 164 Ariz. at 600 n. 4, 795 P.2d at 820 n. 4.

 Although a public entity is entitled to absolute immunity for setting spending priorities, and therefore generally cannot be legally required to redesignate those priorities, this statute does not give the public entity immunity for its negligence even when the negligence arguably could be cured by a specific expenditure. Therefore, we find that the City is not entitled to absolute immunity in this case.

## 2. Adequacy of Warning Signs

Galati argues that questions of material fact remain whether the City was negligent in failing to post appropriate warning and speed signs.[4] Because we find no absolute

---

3. The dissent in *Neilson* concluded that immunity would not attach unless there was a "considered" decision, i.e., one that "consciously balances risk and advantages." 419 So.2d at 1080. The *Neilson* majority, on the other hand, held that absolute immunity would attach to all "poli-

cymaking, planning, or judgmental governmental functions." *Id.* at 1075.

4. The trial court's ruling on the adequacy of the warning and speed signs at the site of the accident is somewhat ambiguous. The court ruled:

immunity in this case, we will address this issue.

In Arizona, a governmental entity, such as the City, has a duty to keep its roads reasonably safe for the traveling public. *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984); *Beach v. City of Phoenix*, 136 Ariz. 601, 603, 667 P.2d 1316, 1318 (1983). Reconstruction and redesign of a dangerous curve is only one method of making streets safe; in certain cases warning signs may be appropriate.[5] *Martinez v. State*, 177 Ariz. 270, 271–72, 866 P.2d 1356, 1357–58 (App.1993); *Newman v. Maricopa County*, 167 Ariz. 501, 504–05, 808 P.2d 1253, 1256–57 (App.1991); *Ofstedahl v. City of Phoenix*, 129 Ariz. 85, 89, 628 P.2d 968, 972 (App.1981).

We find issues of material fact regarding the existence and adequacy of signs at the accident site on the day of the accident. Galati's expert testified at his deposition that the danger posed by McCulloch Boulevard's inadequate design could have been reduced by a lower, 15 miles per hour speed limit, a stop sign, or warning signs. The City admitted that the posted speed limit at the time of the accident was 35 miles per hour, but submitted a sign log purporting to show that signs warning of the dip and curve and an advisory 25 miles per hour sign existed at the site on the day of the accident. We conclude that the issue of the adequacy of the existing signs is an issue of fact for the jury.

### 3. Negligent Roadway Maintenance

Galati also contests the trial court's conclusions "that there was no debris or foreign material on the roadway at the time of the accident," and that "the problem of the roadway is a design problem not a maintenance problem." The City argues that Galati failed to produce any evidence to rebut the City's evidence that there was no dirt or sand on the roadway. Because we find Galati's proof insufficient on this issue, we affirm summary judgment on Galati's claim that the City negligently maintained McCulloch Boulevard.

The parties agree that the City must maintain its roads to keep them reasonably safe for travel. *Lippincott v. State*, 162 Ariz. 171, 173, 781 P.2d 1012, 1014 (App.1989). To hold the City liable for damages caused by improper maintenance, Galati must show both that an unreasonably dangerous condition existed and that the City had actual or constructive notice of this condition. *Id.*

Galati's only evidence of improper street maintenance is his speculation that he would not have slid if there had been no sand or dirt in the road. In response, the City submitted photographs taken shortly after the accident and the affidavit of the investigating police officer that there was no dirt or debris at the location Galati lost control of his vehicle. In addition, Galati points to no evidence that the City had actual or constructive notice of any dirt or debris in the roadway. Although Galati is entitled to all favorable inferences from the record, we conclude that Galati's testimony at his deposition that debris in the roadway must have caused his vehicle to slide insufficient to rebut the City's evidence that the roadway was clear at the accident site. *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We, therefore, uphold the trial court's grant of summary judgment on Galati's negligent maintenance claim.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Galati's negligent maintenance claim and reverse the judgment on the remaining claims.

WEISBERG and TOCI, JJ., concur.

---

"Testimony of the Expert Witness indicates that a warning sign would be appropriate. Facts disclosed indicate that there is a 25 m.p.h. sign, a dip sign and a curve sign posted."

5. A.R.S. section 12–820.03(1) appears to require a city to give "reasonably adequate warning" of unreasonably dangerous street hazards even where the city is not responsible for the design defect creating the hazard.