953 P.2d 902

Steven Kelly SIDDONS, individually and as parent and conservator of the Estate of R.C.S., his minor child; Katie Siddons, as joint custodial parent of R.C.S., her minor child, Plaintiffs/Appellants.

v.

BUSINESS PROPERTIES DEVELOPMENT COMPANY aka Business Properties Partnership Number 41, Defendant/Appellee.

No. CV–97–0103–PR.

Supreme Court of Arizona, En Banc.

Feb. 24, 1998.

Jones, Skelton, & Hochuli by A. Melvin McDonald, Jeffrey Miller, and Eileen Dennis, Phoenix, for Plaintiffs/Appellants.

Ridenour, Swenson, Cleere, & Evans, P.C. by Robert R. Beltz and Scott A. Holden, Phoenix, for Defendant/Appellee.

OPINION

ZLAKET, Chief Justice.

¶ 1 On June 2, 1992, 4–year–old Rick Siddons was seriously injured when a heavy door fell on him in front of Berry's Appliance Warehouse, one of several businesses in a Tempe strip mall. Earlier that day, Berry's employees had removed the glass and metal door from its hinges and placed it on the sidewalk, propping it against the outside wall of the building beside the customer entrance.

¶ 2 Deposition testimony of store managers indicates that Berry's employees routinely followed this practice—sometimes two or three times a day—to facilitate the movement of large appliances in and out of the store. The door frequently remained off the hinges for an hour or two at a time. Berry's had asked its landlord, Business Properties Development (BPD), for permission to install double doors, but that request was refused for "aesthetic" reasons.

¶ 3 This action was brought against both Berry's and BPD. The claim against Berry's

was settled and is not at issue here. The trial court granted BPD's motion for summary judgment. The court of appeals affirmed, holding that "BPD had no duty to protect against a condition created exclusively by Berry's after it took possession of the property, and more so here, when BPD did not have notice that the condition presented a foreseeable risk of harm." We granted review. Because this is an appeal from summary judgment, we must view the facts in a light most favorable to the non-movant. *See Gulf Insurance Co. v. Grisham*, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980).

¶ 4 While the question of duty is generally answered by the court as a matter of law, *see Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1320 (1983), there may be preliminary fact issues that a jury must resolve. *See, e.g., McNally v. Ward*, 192 Cal.App.2d 871, 14 Cal.Rptr. 260, 266 (1961) (whether defective portion of premises was reserved by landlord for common use, or was under exclusive control of tenant, ordinarily a question of fact).

¶ 5 This matter concerns a landlord's duty with respect to areas allegedly within its control. Our analysis is guided by *Restatement (Second) of Torts* § 360 (1965), which reads as follows:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

*See also Martinez v. Woodmar IV Condominiums Homeowners Ass'n Inc.*, 189 Ariz. 206, 208–09, 941 P.2d 218, 220–21 (1997). Thus, if BPD retained control over the area where the accident occurred, it would have had a duty to inspect and make safe. This duty extended to "members of the tenant's family, his employees, his invitees, his guests, and others on the land in the right of the tenant." *Martinez*, 189 Ariz. at 209, 941 P.2d at 221 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 63, at 440 (5th ed.1984)); *see also Dolezal v. Carbrey*, 161 Ariz. 365, 371, 778 P.2d 1261, 1267 (App.1989).

¶ 6 We must therefore decide if the evidence here would support a finding that the condition was within BPD's "dominion and control." *See Udy v. Calvary Corp.*, 162 Ariz. 7, 12–13, 780 P.2d 1055, 1060–61 (App. 1989) (quoting *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491, 499–500 (1985)). The lease between defendant and Berry's states that "[a]ll common areas shall be subject to the exclusive control and management of Landlord." Common areas, as defined in the contract, include the shopping center's parking lot, exterior walks, and service corridors. Another clause of the lease provides that

> Tenant shall not make any alterations, additions, changes or improvements ... to the interior or exterior of the premises nor make any contract therefor without first procuring Landlord's written consent.

Arguably, this broad language gave BPD the power to prevent removal of the door, thus eliminating the potential hazard. At the very least, such evidence raises factual issues regarding the landlord's control.

¶ 7 Summary judgment was also inappropriate because disputable facts exist as to whether BPD had notice of the hazardous condition. The store owner, Brian Frank Berry, and managers Jimmy Wazney and John R. Garber testified on deposition that they had asked the landlord for permission to install double doors on numerous occasions. BPD argues that Berry's never expressed safety as a reason for these requests. Wazney, however, claims that he told a BPD representative about the store having to remove the door from its hinges, and brought up the potential injury risk with her. In any event, testimony indicates that BPD actively managed the shopping center and made frequent on-site visits. As previously noted, the door was often removed two or three times a day. Thus, BPD arguably had opportunities to discover the condition. In fact, BPD admits having received notice that the "tenant occasionally took the door off its hinges." This is sufficient to create a jury question

**160**

regarding the reasonableness of BPD's inaction, making summary judgment inappropriate.

¶ 8 Our analysis is unaffected by the lessee's alleged failure to explicitly inform BPD that the door presented a risk of harm. *See Restatement (Second) of Torts* § 360 cmt. a (rule applies "whether the lessee knows or does not know of the dangerous condition"). A jury could find that BPD had sufficient independent knowledge to require at least an inspection of the premises. Similarly, that the tenant may have created the hazard does not diminish the landlord's obligation to make those areas within its control safe. Whether the landlord *could* have done so is clearly for a jury to decide. *See Restatement (Second) of Torts* § 360.

¶ 9 We reverse the trial court's grant of summary judgment, vacate the court of appeals' memorandum decision, and remand for trial on the merits.

JONES, V.C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.