204 P.3d 1044

Juanita M. TOSTADO, Plaintiff–
Appellant,

v.

CITY OF LAKE HAVASU,
Defendants–Appellee.

No. 1 CA–CV 07–0678.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 9, 2008.

Review Denied March 17, 2009.

Mark R. Jewett, Scottsdale and McCune & Wright by Richard D. McCune, Kristy M. Arevalo, Redlands, CA, Attorneys for Appellant.

Doyle Berman Murdy, PC by William H. Doyle, Teresa Hayashi Wales, D. Andrew Bell, Phoenix and Paul Lenkowsky, Bullhead City, Attorneys for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Juanita M. Tostado ("Appellant") appeals the superior court's grant of summary judgment in favor of the City of Lake Havasu ("the City"). Appellant argues on appeal that the superior court improperly found that the City had absolute immunity. For the reasons discussed below, we reverse the superior court's grant of summary judgment and remand the case for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY[1]

¶ 2 In September 2002, an official from the City's fire department, Frank Foti, approached a local emergency room doctor, Dr. Michael Ward, with concerns about health

---

1. We "view the evidence and all reasonable inferences in the light most favorable to the party opposing the motion [for summary judgment]."

*Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 396–97, ¶ 5, 64 P.3d 836, 838–39 (2003).

problems associated with possible carbon monoxide ("CO") exposure in the Bridgewater Channel (the "Channel") at Lake Havasu. Foti informed Dr. Ward that his superiors had refused his request to invite the National Institute for Occupational Safety and Health ("NIOSH") to come and test the CO levels in the Channel. On his own initiative, Dr. Ward contacted NIOSH and invited them to come to the Channel to perform CO testing.

¶ 3 NIOSH personnel came and performed CO testing in the Channel over Labor Day weekend of 2002. In December 2002, Dr. Ward received the results of the NIOSH testing, which indicated high levels of CO in the Channel. After receiving the test results, Dr. Ward wrote a letter to city officials, including the mayor and city manager, with the NIOSH report attached. Dr. Ward also personally handed out copies of the letter and attachment to city officials participating in a mock disaster drill. After receiving no official response from the City, Dr. Ward gave the NIOSH information to a local newspaper reporter who published the results in February 2003.

¶ 4 Before publication, city officials discussed the letter and the level of CO in the Channel at a staff meeting,[2] but no official action was taken. On April 8, 2003, the City held a city council meeting at which it decided to authorize Sonoma Technology, Inc., to study the level of CO in the Channel, but it did not implement interim measures, such as limiting channel traffic or putting up warning signs. On May 13, Sonoma Technology presented the results of the study to the city council and recommended further data collection. The city council also heard from Dr. Ward who provided information about the health issues associated with CO exposure.

After holding a debate on the topic, the city council approved additional funds for Sonoma Technology to conduct further data collection and requested a revised scope of work that would include a public education component.[3]

¶ 5 On May 25, 2003, Mark Tostado, Appellant's son, drowned while at the Channel. An autopsy revealed that blood samples taken from Mark Tostado's body contained elevated levels of CO. The medical examiner concluded that "the combined effects of the Ethanol and Carbon Monoxide was sufficient to cause [Mark Tostado] to become unconscious and be unable to save himself."

¶ 6 Appellant filed a wrongful death action against the City, among others, asserting claims of simple negligence, gross negligence, and "dangerous condition of public property." Appellant specifically alleged that the City negligently maintained, operated, and controlled Lake Havasu and its surrounding channels so as to render its use hazardous and dangerous. She also asserted that the City failed to warn of or take steps to reduce the dangerous condition caused by exposure to high levels of CO and that this failure constituted gross negligence.

¶ 7 The City moved for summary judgment in the superior court on the basis that (1) it did not owe Mark Tostado a statutory or common law duty in negligence law and (2) legislative immunity barred Appellant's claims because "she alleges negligence and gross negligence in the exercise of a 'legislative function.'" Appellant responded and filed a motion for the superior court to take judicial notice of the United States District Court's decision in *Heck v. City of Lake Havasu*, CV 04–1810–PCT–NVW, 2006 WL 2460917 (D.Ariz. Aug. 24, 2006).[4]

---

2. Although the staff meeting included department officials, such as the police chief, fire chief, parks and recreation director, city clerk, and finance director, it did not include the mayor or city council members.

3. On June 10, 2003, the city council ratified the revised scope of work, which included a public education component. On April 23, 2004, the city council enacted ordinances that prohibited boats from idling in the Channel and authorized funds for public education, the enforcement of the ordinance, and the implementation of an air quality monitoring and advisory system.

4. Timothy Heck died in the Channel three months after the death of Mark Tostado under apparently similar circumstances. Heck's family filed a lawsuit in the United States District Court against the City for its failure to warn of the presence of dangerous levels of CO in the Channel or prevent dangerous levels of CO from accumulating in the Channel. *Heck v. City of Lake Havasu*, CV 04–1810–PCT–NVW, 2006 WL 2460917 (D.Ariz. Aug. 24, 2006). In that case, the City filed a motion for summary judgment, asserting that it did not owe a duty to the decedent and that it was entitled to legislative immunity. The court denied the motion, holding that

¶ 8 The superior court denied Appellant's motion for judicial notice, stating that the district court's ruling did not bind it under a theory of issue preclusion or collateral estoppel. The superior court then granted the City's motion for summary judgment as to the issue of legislative immunity. The court stated:

> [Appellant] seeks damages for negligence from Lake Havasu City, a public entity, for failure to act quickly to notify the public of the CO hazard and for failing to pass an ordinance restricting boating activity in the channel. [Appellant's] complaint strikes at the legislative function of the policy making body.... The issues facing the council were whether to exercise ... its police power to limit the use of the channel.
>
> ....
>
> The decision to warn the public of the hazards of CO or to exercise the city's police powers are proper legislative functions. As such the city is entitled to absolute immunity for its actions or omissions.

¶ 9 Appellant appeals from the superior court's grant of summary judgment in favor of the City. We have jurisdiction pursuant to Arizona Revised Statute ("A.R.S.") section 12–2101(B) (2003).

## II. ANALYSIS

■ ¶ 10 On appeal, Appellant contends that the trial court erred in finding that the City was entitled to legislative immunity and that issues of material fact exist regarding whether the City owed a duty to Mark Tostado. Although neither we nor the superior court is bound by the United States District

there were triable issues of material fact regarding whether the City owed Timothy Heck a duty of care and whether the City owns, controls, and/or maintains the Channel for purposes of premises liability. The court also ruled as a matter of law that the City was not entitled to legislative immunity for its actions or inactions regarding the CO problem in the Channel in 2003.

5. Although the City has complained that Appellant has violated Rule 28 by her cite to *Heck*, we see no violation. First, Appellant's reference to *Heck* in the fact section of her opening brief was merely to inform this court of the actions and

Court, we conclude that the court's reasoning in Heck is sound, and we largely adopt that reasoning here.[5]

### A. Immunity

¶ 11 Appellant argues that the City was not entitled to legislative immunity because it failed to "take any affirmative act, or even to decide not to act" regarding the high levels of CO in the Channel. In response, the City contends that its decisions regarding the CO problem in the Channel were the exercise of legislative or administrative functions, and therefore it is entitled to absolute immunity.

■ ¶ 12 Because absolute immunity is a question of law for the court, it is subject to de novo review. *Link v. Pima County,* 193 Ariz. 336, 341, ¶ 18, 972 P.2d 669, 674 (App. 1998). In Arizona, governmental immunity is the exception and liability is the rule. *Alliedsignal, Inc. v. City of Phoenix,* 182 F.3d 692, 694 (9th Cir.1999) (citations omitted). The statute at issue, Arizona Revised Statute § 12–820.01 (2003), provides in relevant part:

> A. A public entity shall not be liable for acts and omissions of its employees constituting either of the following:
>
> 1. The exercise of a judicial or legislative function.
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.
>
> B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:

inactions taken by the city before and after the death of Mark Tostado. Second, in her reply brief, Appellant argues that *Heck* may be used for collateral estoppel purposes against the City, a use allowed by Rule 28(c)(1). However, despite such citation being permitted by Rule 28(c)(1), it does not help Appellant here because offensive collateral estoppel generally is unavailable against the government. *First Interstate Bank of Ariz. v. State Dep't of Revenue,* 185 Ariz. 433, 436, 916 P.2d 1149, 1152 (App.1995). Thus, the *Heck* court's denial of the City's motion for summary judgment will not preclude our review of any issue in this case.

1. A determination of whether to seek or whether to provide the resources necessary for any of the following:

(a) The purchase of equipment.

(b) The construction or maintenance of facilities.

(c) The hiring of personnel.

(d) The provision of governmental services.

2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

Arizona Revised Statute § 12–820.01 is interpreted "with a view to finding immunity only if it clearly applies." *Schabel v. Deer Valley Unified Sch. Dist.*, 186 Ariz. 161, 164, 920 P.2d 41, 44 (App.1996). On appeal, the City argues that it is entitled to legislative and administrative function immunity, we therefore address both.

**1. Legislative Function Immunity**

¶ 13 The City contends that the city council performed several legislative acts regarding the CO problem in the Channel. In support, the City states:

Here, the [city council] was made aware of a potential problem (carbon monoxide issues in the Bridgewater Channel), it made an affirmative decision to exercise its fact finding authority as a legislative body to learn about and discover the extent of the potential problem (fund the carbon monoxide study in the Bridgewater Channel), and, after doing so, it affirmatively decided to exercise its law making authority by enacting appropriate ordinances (enacting ordinances prohibiting boats from idling while beached in the Bridgewater Channel and granting the police chief discretionary authority to act in the event of deteriorating air quality).

The City asserts that these decisions constitute an exercise of legislative function and therefore it is entitled to absolute immunity under A.R.S. § 12–820.01(A).

¶ 14 We first note that because the city council did not enact the "appropriate ordinances" until after Mark Tostado's death, the City cannot use these ordinances to immu-nize itself from liability for Mark Tostado's death. We therefore focus our discussion on whether the City's acts before Mark Tostado's death constitute a legislative function.

¶ 15 Before Mark Tostado's death, the City held two city council meetings in which it discussed the CO problem in the Channel. In April 2003, the city council hired Sonoma Technologies to perform an initial empirical study of the CO problem. The city council met again in May and decided to commission Sonoma Technologies to perform further research and to expand its scope of work to include a public education component. The minutes from these meetings demonstrate that the city council members discussed whether further action was needed at that time or after more information and study. Ultimately, the city council decided that further study was called for, rather than "rushing to solutions" and pushing through immediate changes in the law.

¶ 16 Section 12–820.01(A)(1) provides immunity for the "exercise of a ... legislative function." See *Galati v. Lake Havasu City*, 186 Ariz. 131, 134, 920 P.2d 11, 14 (App.1996). Thus, a public entity is entitled to immunity if it makes "an actual decision or affirmative act." *Id.* An actual decision is made when deciding to do something or deciding not to do something. *Goss v. City of Globe*, 180 Ariz. 229, 232, 883 P.2d 466, 469 (App.1994). However, the statute does not immunize non-decisions, such as a failure to make a decision or a decision by default. *Id.* at 231, 883 P.2d at 468; see also *Galati*, 186 Ariz. at 134, 920 P.2d at 14. Therefore, "before immunity attaches there must be some form of 'considered' decision, that is, 'one which consciously balances risk and advantages.' " *Goss*, 180 Ariz. at 231, 883 P.2d at 468 (quoting *Dep't of Transp. v. Neilson*, 419 So.2d 1071, 1080 (Fla.1982) (Sundberg, J., dissenting)).

¶ 17 In Galati, we addressed whether a city was entitled to immunity under A.R.S. § 12–820.01(A)(1) for its failure to fund improvements of a road. 186 Ariz. at 134, 920 P.2d at 14. There, a motorist was injured in a car accident and sued the city, alleging that the city was negligent in its design and maintenance of the road. *Id.* at 133, 920 P.2d at 13.

The trial court granted the city's motion for summary judgment on the ground that the city was immune from liability for its decision not to redesign or allocate funds for reconstruction of the road. *Id.*

¶ 18 On appeal, the city argued that because street design and funding decisions are the exercise of legislative functions, it could not be sued for dangerous roadway design when the correction of such a design requires the allocation of limited financial resource. *Id.* at 134, 920 P.2d at 14. The city, however, failed to point to any evidence demonstrating that it had made an affirmative decision not to fund street improvements. *Id.* Instead, it asserted that the "prioritization of road construction projects makes its failure to fund the project the same as a decision not to fund." *Id.* We disagreed, stating that the "absence of a decision to fund a street improvement project is not the exercise of a legislative function...." *Id.* Thus, the city was not entitled to immunity.

¶ 19 Here, the City argues that it is immune from suit regarding its maintenance of the Channel and failure to warn of the dangerous condition posed by exposure to high levels of CO in the Channel. Specifically, the City claims that its decision to fund a study is a legislative function entitled to immunity. We, however, are not persuaded by this argument. As in Galati, the City in this case does not point to any evidence that it made an actual decision regarding whether to enact an ordinance. Instead, the City made this decision "by default" because it decided to fund studies of the CO problem rather than vote on whether to enact an ordinance. The City's choice to postpone the decision of whether to enact an ordinance, no matter how fully deliberated, is materially different than actually deciding whether to enact an ordinance. Because no actual decision-making occurred, the City did not exercise a legislative function that is entitled to absolute immunity. See *Id.* at 134, 920 P.2d at 14; cf. *Goss*, 180 Ariz. at 231, 883 P.2d at 468.

### 2. Exercise of an Administrative Function Involving Determination of Fundamental Governmental Policy

¶ 20 The City next contends that its decisions regarding the CO problem in the Chan-

nel were "administrative function[s] involving the determination of fundamental governmental policy." A.R.S. § 12–820.01(A)(2), (B).

¶ 21 Section 12–820.01(A)(2) provides absolute immunity for a public entity when exercising "an administrative function involving the determination of fundamental governmental policy." The key question therefore is whether the government's actions involved a determination of fundamental governmental policy. *Fid. Sec. Life Ins. v. Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 10, 954 P.2d 580, 583 (1998) ("To be absolutely immune ... fundamental governmental policy is the element which, first and foremost, must be present in the decision making process."). "Where no actual decision is made, there is no governmental function or statement of public policy at issue." *Galati*, 186 Ariz. at 136, 920 P.2d at 16.

¶ 22 As with legislative function immunity, we have held that administrative function immunity does not attach where "no actual decision-making has occurred." See *Goss*, 180 Ariz. at 232, 883 P.2d at 469; *Galati*, 186 Ariz. at 137, 920 P.2d at 17. For example, in Goss we addressed whether the City of Globe was immune from suit under A.R.S. § 12–802.01(A)(2). 180 Ariz. at 230, 883 P.2d at 467. In that case, the appellant sued the city after suffering an injury from falling off a wall, which the city had designed and maintained. *Id.* The appellant argued that the city was negligent in its creation, design, and maintenance of the wall. *Id.* The city moved for summary judgment, asserting that it was immune, and the trial court granted the city's motion.

¶ 23 On appeal, the city argued that it was entitled to absolute immunity because the decision not to allocate funds for the construction of sidewalks or guardrails was the exercise of an administrative function. *Id.* at 231, 883 P.2d at 468. We, however, concluded that the record showed that the city never made an "actual decision not to spend funds on guardrails or sidewalks." *Id.* Instead, by not allocating funds for the wall's maintenance, the city had made this decision "by

default." *Id.* Because no actual decision-making had occurred, we held that A.R.S. § 12–802.01 did not apply; therefore, the city did not enjoy immunity from suit. *Id.* at 232, 883 P.2d at 469.

¶ 24 As explained above, supra ¶ 19, the City in this case postponed its decision to enact an ordinance and therefore did not make an actual decision about the ordinances. Because no actual decision-making occurred, no governmental function or statement of public policy is at issue. Galati, 186 Ariz. at 136, 920 P.2d at 16. Thus, the City is not entitled to absolute immunity for its non-decision.

**B. Negligence**

¶ 25 Appellant also contends that a triable issue of material fact exists regarding whether the City owed Mark Tostado a duty of care. Although the trial court did not consider this issue, because we can uphold the trial court's grant of summary judgment for any reason, " 'even if that reason was not considered' by the court," we address it on appeal. *Parkinson v. Guadalupe Pub. Safety Ret. Local Bd.*, 214 Ariz. 274, 277, ¶ 12, 151 P.3d 557, 560 (App.2007)(quoting *Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986)).

¶ 26 Appellant filed three negligence-based claims: simple negligence, gross negligence, and "dangerous condition of public property." Establishing a claim for negligence requires a plaintiff to prove: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). The question of duty, which we will consider here, is a legal question decided by the court. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985) superseded on other grounds by statute, A.R.S. § 33–1551 (2007). The other elements, which have understandably not been argued on appeal are factual issues and therefore generally are decided by the jury. *Markowitz*, 146 Ariz. at 358, 706

P.2d at 370. We thus turn to the issue of duty.

**1. Duty**

¶ 27 Appellant argues that the relationship between the City, as possessor of the Channel, and Mark Tostado, as an invitee, gave rise to a duty to warn or protect Mark Tostado from unreasonable dangers in the Channel. A duty exists if the "relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Id.* at 356, 706 P.2d at 368. In Arizona, a government possessor of land owes a duty to public invitees "to conform to a particular standard of conduct to protect against foreseeable and unreasonable risks of harm." *Bellezzo v. State*, 174 Ariz. 548, 550–51 & n. 3, 851 P.2d 847, 849–50 & n. 3 (App.1992)(stating that because plaintiff was a public invitee, State had a duty to discover and warn or protect her against unreasonable risks of harm); *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367 (concluding that the State owed a duty to plaintiff because it "invited and indeed encouraged [plaintiff] and others to come to a parcel of land specifically dedicated to extensive public use and enjoyment"). Thus, to determine the existence of a duty, we must address whether the City "possessed" the Channel and whether Mark Tostado was an "invitee."

**a. Possessor**

¶ 28 Restatement (Second) of Torts § 328E(a) (1965) defines a possessor of land as "a person who is in occupation of the land with intent to control it." See also *Clarke v. Edging*, 20 Ariz.App. 267, 272–73, 512 P.2d 30, 35–36 (App.1973)(relying on Restatement to determine whether lessor was a "possessor of land" and liable for the injuries of a child trespasser). Unlike the issue of duty, which is a question of law, whether a party exercises control over the land is "a question of fact which ordinarily should be left to the fact finder." *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, 133, ¶¶ 10, 23, 953 P.2d 168, 170, 173 (1998)(quoting *Lewis v. N.J. Riebe Enter., Inc.* 170 Ariz. 384, 389, 825 P.2d 5, 10 (1992)); see also *Siddons v. Bus.*

*Props. Dev. Co.*, 191 Ariz. 158, 159, ¶¶ 4–6, 953 P.2d 902, 903 (1998)(holding that whether landlord was a possessor was an issue of material fact).

¶ 29 Here, Appellant has submitted sufficient evidence to raise a triable issue of fact regarding whether the City was a possessor of the Channel. On September 25, 2001, Arizona quitclaimed to the City all "right, title and interest" in the Channel, which the City accepted. County Supervisor Buster Johnson testified that the City "owns, controls, and maintains the [Channel]." Moreover, on at least two separate occasions, the city attorney prepared a memorandum for the mayor and the city council in which he stated that "the primary obligation" for law enforcement within the Channel is the City's. Accordingly, a triable issue of fact exists regarding whether the City is a possessor of the Channel.

### b. Mark Tostado as "Invitee"

¶ 30 Restatement (Second) of Torts § 332(2) defines a public invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." If land is held open to the public, no express invitation is required, and any member of the public who enters the land for the purpose for which it is held open is an invitee. See Restatement (Second) of Torts § 332 cmt. d; see also *Callender v. MCO Props.*, 180 Ariz. 435, 442, 885 P.2d 123, 130 (App.1994)(holding that plaintiff was a public invitee at lake because *federal government owned the lake* and held it open to the public).

¶ 31 Here, the parties do not dispute that the Channel was held open to the public for the purpose of boating and swimming, among other things, and that Mark Tostado went to the Channel for the purpose of boating and swimming. Thus, Mark Tostado is properly classified as a public invitee.

### III. CONCLUSION

¶ 32 Arizona Revised Statute § 12–820.01 does not immunize the City on the basis of legislative or administrative function immunity from Appellant's claims. Also, Appellant has raised a triable issue of fact regarding whether the City was a possessor of the Channel and thus owed a duty to Mark Tostado. We therefore reverse the superior court's grant of summary judgment and remand this matter for further proceedings consistent with this opinion.

CONCURRING: MAURICE PORTLEY, and PATRICIA K. NORRIS, Judges.