151 P.3d 557

**Greg PARKINSON, an individual, Plaintiff/Appellee,**

v.

**GUADALUPE PUBLIC SAFETY RETIREMENT LOCAL BOARD, an administrative body; Dovar Flores; Wayne Clement; Rosemary Arellano; Felipe Quintero; Allan Romania, all in their official capacities as members of the Guadalupe Public Safety Retirement Local Board, Defendants/Appellants.**

No. 1 CA–CV 06–0238.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 30, 2007.

Law Offices of Michael Napier, PC, By Michael Napier and Dale F. Norris, Phoenix, Attorneys for Plaintiff/Appellee.

Lewis and Roca LLP, By Richard S. Cohen and Justin S. Pierce, Phoenix, Attorneys for Defendants/Appellants.

Kutak Rock LLP, By Marc R. Lieberman and Andrew J. Russell, Scottsdale, Attorneys for Amicus Curiae, The Fund Manager of the Arizona Public Safety Personnel Retirement System.

## OPINION

EHRLICH, Judge.

¶1 The Guadalupe Public Safety Retirement Local Board ("Board") denied Greg Parkinson's request for an accidental-disability pension, and he appealed that decision to the superior court. The court found that the Board's action was not supported by substantial evidence, and it reversed the decision. The Board then appealed to this court.

## *BACKGROUND*

¶2 From 1995 until February 17, 2004, Parkinson was the Fire Chief for the Town of Guadalupe ("Town"). On June 20, 2000, he suffered a neck injury on the job, but, after taking some time off, he returned to work in 2001. The injury did not resolve, however, and, in his January 2003 performance review, his "recurring neck problem" and desire for medical intervention were noted.

¶3 On Tuesday, February 3, 2004, Town Manager Thomas Morales, Jr., informed Parkinson by letter that Parkinson was being placed on paid administrative leave pending an internal investigation. Morales ordered Parkinson to cooperate with the investigation and not to be on Town property without approval. Parkinson received Morales' letter and heard from the Town's investigating attorney, but he has consistently maintained that he was never interviewed or informed of the reasons that he had been placed on leave.

¶4 On Friday, February 6, 2004, Parkinson submitted an application for an accidental-disability pension pursuant to the Public Safety Personnel Retirement System ("PSPRS") and relevant statutes. *See* Ariz. Rev.Stat. ("A.R.S.") §§ 38–841 *et seq.* (2001). Although the parties disagree about whether it was ever sent, the Board produced a letter

from Morales to Parkinson entitled "Notice of Intent to Terminate" ("Notice") and dated Friday, February 13. The Notice stated that the Town had found that there was cause for Parkinson's dismissal from employment because he had used sexually offensive language, engaged in sexually offensive conduct, abused his position to obtain favors, sexually assaulted employees and interfered with the investigation. The Notice also stated that Parkinson could respond to the charges at a pre-termination hearing on February 18.

¶5 Parkinson submitted a letter of resignation to Morales on Tuesday, February 17, 2004. The next day, Morales sent Parkinson a letter acknowledging receipt of Parkinson's pension application and stating that he would forward it "to the state agency."[1] Morales then attached a cover letter to Parkinson's application stating that Parkinson had resigned after having received the Notice and that he was no longer an employee.

¶6 In July 2004, the Board approved Parkinson's application for a disability pension. In August, his counsel requested information regarding the investigation of Parkinson's conduct, and Morales disclosed a copy of the Notice that was neither on Town letterhead stationary nor signed, although Morales stated that the "original February 13, 2004 Notice was signed and sent to Mr. Parkinson." In September, the Board decided to conduct a "rehearing" to determine whether the cause of Parkinson's resignation was an accidental disability as required by A.R.S. § 38–844(B)(2001).[2]

¶7 At the subsequent hearing, Parkinson was asked when he had first learned the reasons that he had been placed on administrative leave. He said that he had learned the reasons after February 18, 2004, when he had "received a document from the town manager." Parkinson's counsel then distributed a copy of the February 13 Notice that he had received in August. When Parkinson

was asked if he had seen the Notice before, he said that he had not.

¶8 Parkinson admitted that he had not consulted a doctor for his neck problems between January 2003 and February 2004, but he said that he had continued to have the problems nonetheless. Several Board members noted that an independent medical examiner had reported that Parkinson could not "perform the central prerequisites of his job type."

¶9 The Board chairman stated that he had understood that the Notice had been signed and sent to Parkinson. After discussing the statutory language, the Board voted to deny Parkinson a disability pension. In its subsequent order, it stated that the hearing had been "to determine if the sole cause of resignation was the accidental disability" and that the Board had found that Parkinson's resignation "was not solely caused by the accidental disability."

¶10 Parkinson appealed to the superior court, and the parties stipulated to the record. After hearing argument and reviewing the record, the court issued a signed minute entry reversing the Board's decision. The court concluded that the record did not support a finding that Parkinson had received the Notice because the copy was unsigned, not on letterhead and Parkinson had denied seeing it before the rehearing. The court thus assumed that Parkinson had been ignorant of the specific allegations, the Notice and the pre-termination hearing when he had resigned. Additionally, he had undeniably suffered a job-related injury, continued to have problems and had not been terminated but had resigned, citing his disability as the reason.[3] He had also told the Board that he had obtained the pension application in January and inquired about the process before having been placed on leave. If any competent evidence showed that the Notice had been sent, the court observed, "there would be at least room for two opinions," but, with-

---

1. Pursuant to A.R.S. § 38–847(D)(2001), a local pension board decides an individual's eligibility, not a state agency.

2. The legislature's 2004 amendment to this section has no application to this case.

3. Parkinson's letter of resignation gave no reason for his departure. At the hearing, when asked why he had not stated a reason, he said that he had previously submitted the disability pension application.

out such evidence, it decided, nothing supported the Board's decision. Thus, the court concluded, the Board had abused its discretion in denying Parkinson the pension.

## DISCUSSION

■ ¶ 11 The Board contends that its decision is entitled to substantial deference because it chose between two inconsistent factual conclusions, each supported by the record. The Board intimates that the true reason that Parkinson resigned was not his disability but the investigation's potential cloud on his employment and the possibility of termination. Therefore, it maintains, it could properly deny the pension on the basis that the resignation was not solely due to the disability. The Board also contends that the superior court exceeded the proper scope of review.

■ ¶ 12 We will affirm the superior court if its ruling was "correct for any reason, even if that reason was not considered" by the court. *Glaze v. Marcus,* 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986). For the reasons that follow, we affirm the judgment.

### I. Reason for Resignation

■ ¶ 13 The issue before us is whether an administrative act was illegal, arbitrary, capricious or an abuse of discretion. *Smith v. Ariz. Long Term Care Sys.,* 207 Ariz. 217, 221, ¶ 19, 84 P.3d 482, 486 (App.2004). If the administrative body's consideration permits two different conclusions, the decision is neither arbitrary nor capricious even if we believe it to be erroneous. *See Petras v. Ariz. State Liquor Bd.,* 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981). Further, we will not set aside the superior court's decision if the record contains supporting evidence, but we reach our own legal conclusions. *Id.* at 220, ¶ 14, 221, ¶ 19, 84 P.3d at 485, 486.

¶ 14 Fundamental to this appeal is the proper interpretation of the statutes governing a PSPRS accidental-disability pension. "A member [of the PSPRS] is eligible for an accidental disability pension if the member's employment is terminated by reason of accidental disability." A.R.S. § 38–844(B). "Accidental disability" in turn is defined as "a physical or mental condition which the local board [4] finds totally and permanently prevents an employee from performing a reasonable range of duties within the employee's job classification and was incurred in the performance of the employee's duty." A.R.S. § 38–842(1) (2002). A medical board is charged with evaluating a member's eligibility for an accidental-disability pension and reporting its findings to the local board. A.R.S. § 38–859(A), (D) (2001).

¶ 15 No statute provides that a member's accidental disability must be the sole reason for his resignation or that the Board must find as a fact that a member's disability is the sole cause of the end of his employment. Accordingly, even if Parkinson decided to resign because he feared that the results of the Town's investigation would be embarrassing to him or lead to his dismissal, nothing in the law bars him from receiving a disability pension if his resignation was supported with competent medical evidence that his disability totally and permanently prevented him from performing his duties and if the Board found him to be totally and permanently so prevented.

¶ 16 The Board claims that it could have believed that Parkinson truthfully stated that he resigned because of his disability or instead that he resigned because he was under investigation and feared he would be fired. From this premise, it asserts that, if it found that the second possibility was the true one, it also could find that Parkinson's resignation was not solely due to a disability and it could therefore deny the pension.[5]

¶ 17 The unchallenged independent medical report accepted by the Board established that Parkinson was physically unable to continue to perform the duties of his job. Because the Board found that he had met the statutory requirements and was not disqualified by any other statutory provision, as a

---

4. The local board is "the retirement board of the employer, who are the persons appointed to administer the system as it applies to their members in the system." A.R.S. § 38–842(17).

5. The Board does not deny that Parkinson has a disability.

matter of law, then, Parkinson qualified for a pension.[6]

¶ 18 We do not find in the statutory scheme any requirement that a pension applicant have a single reason, an objectively credible reason or even a reasonable reason for seeking a pension. We find no indication that the Arizona Legislature intended the result that, if a non-disability reason or factual circumstance might motivate a member to retire, the member is disqualified from receiving a disability pension. *See State ex rel. Smith v. Bohannan,* 101 Ariz. 520, 524, 421 P.2d 877, 881 (1966) (We will not read into a statute a meaning that its language does not clearly intend.); *Collins v. State,* 166 Ariz. 409, 415, 803 P.2d 130, 136 (App.1990) (We give statutes a sensible construction, one that advances their purpose and avoids an "absurd" result.). Instead, we conclude that the Legislature intended that a member is eligible for a disability pension if the Board finds that he suffers a medically documented disability, that such disability is a cause of his decision to terminate employment and that he is not disqualified by any other statutory provisions.

## II. Superior Court's Scope of Review

¶ 19 The Board argues that the superior court exceeded the proper scope of review and erred in finding that "no competent evidence" established that the Board had sent the Notice to Parkinson. It contends that it could find from circumstantial evidence that Morales had sent the Notice, emphasizing that the only contradictory evidence was Parkinson's own testimony. It maintains then that it was the best assessor of Parkinson's credibility on this question and that we must defer to its assessment. *See Webster v. State Bd. of Regents,* 123 Ariz. 363, 365, 367–68, 599 P.2d 816, 818, 820–21 (App.1979)(Because committee heard testimony and judged witnesses' credibility, court erred in substituting its judgment for that of committee.).

¶ 20 The credibility dispute is irrelevant. Even if Parkinson had received the Notice and chose not to contest the charges, the Town did not terminate his employment; Parkinson resigned. The Board found that the medical evidence supported his claim of an accidental disability, and he thus qualified for a pension. Accordingly, we reject the Board's contention that, even if Parkinson had decided to resign as soon as he was placed on leave and the Town did not need to send the Notice, the Board could still have denied the pension because the reason Parkinson resigned was to avoid involuntary termination.

## III. Amicus *Brief*

¶ 21 The Fund Manager for the PSPRS has filed a brief as an *amicus curiae* pursuant to Arizona Rule of Civil Appellate Procedure ("Rule") 16. The Fund Manager asks us to clarify the language of A.R.S. § 38–844(B) and to hold that an accidental disability must be the actual or "but-for" cause of termination of employment in order for a member to be eligible for such a pension. Parkinson has responded, objecting that the Fund Manager is not an officer or agency of the State of Arizona and is therefore subject to Rule 16's requirement that the parties consent to the brief, that this is a new issue not raised below and that, even if we agree with the Fund Manager, the word "cause" is interpreted broadly to include cause-in-fact and but-for causation.

¶ 22 We have already rejected an interpretation that would require the Board to find whether an alleged disability is the real, actual or "but-for" cause of a member's resignation. Therefore, we need not determine whether Rule 16 permits the Fund Manager to file an *amicus* brief in this matter.

---

**6.** The statutes identify some circumstances that will disqualify a member, e.g., if disability results from an injury suffered before beginning employment or while engaged in a criminal act; if a member is discharged for theft, embezzlement, fraud or misappropriation of the employer's property; or if a member fails to undergo a medical examination. *See* A.R.S. §§ 38–844(C), 38–849(A)(2001), 38–859(C). The Town has not asserted that any of these statutes applied to Parkinson.

## CONCLUSION

¶ 23 Because we conclude that the superior court correctly reversed the Board's order denying Parkinson an accidental-disability pension, we affirm its judgment.

CONCURRING: PATRICK IRVINE, Presiding Judge, and JANET E. BARTON, Judge Pro Tempore.[7]

**7.** The Honorable Janet E. Barton, Judge of the Maricopa County Superior Court, was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to Arizona Constitution article 6, section 3.