229 P.3d 257

William T. HOSEA, Plaintiff–Appellant,

v.

**CITY OF PHOENIX FIRE PENSION BOARD, an administrative body, Defendant–Appellee.**

**No. 1 CA–CV 09–0105.**

Court of Appeals of Arizona, Division 1, Department E.

April 29, 2010.

The Law Offices of Judith E. Abramsohn by Judith E. Abramsohn, Phoenix, Attorneys for Appellant.

Ryan Rapp & Underwood, PLC by David L. Niederdeppe, Phoenix, Attorneys for Appellee.

Kutak Rock, LLP by Marc R. Lieberman, Mary Grace McNear, Scottsdale, Attorneys for Fund Manager of Public Safety Personnel Retirement System, Amicus Curiae.

WEISBERG, Judge.

¶ 1 William T. Hosea appeals from a judgment of the superior court affirming an administrative decision of the City of Phoenix Fire Pension Board denying his application for an accidental disability pension. For reasons that follow, we affirm.

## BACKGROUND

¶ 2 Hosea was employed as a firefighter with the City of Phoenix Fire Department from March 7, 1977 to May 31, 2007. As such, he was a member of the Public Safety Personnel Retirement System ("System"). In December 1994, Hosea was injured on the job and had surgery in June 1995. Although he had some continuing problems from the surgery, he was released to full-duty status in October 1995.

¶ 3 On April 17, 2002, Hosea applied for the Deferred Retirement Option Plan ("DROP"). Under this plan, a member of the System with twenty years of credited service who is eligible for normal retirement may elect to participate in the DROP. A member who elects to participate in the DROP shall "voluntarily and irrevocably" designate a retirement date of not more than sixty consecutive months into the future and agrees to terminate employment on the designated date. *See* Arizona Revised Statutes ("A.R.S.") §§ 38–844.02, –844.03(A),(B) (Supp. 2009). Although there are significant adverse economic consequences if a member fails to terminate employment on completion of the DROP period, *see* A.R.S. § 38–844.03(C), Hosea irrevocably designated his participation in the DROP to terminate on May 31, 2007.

¶ 4 On July 9, 2006, while on duty, Hosea was injured when a defective seat on a truck collapsed, which caused him pain and other medical problems. Hosea submitted an injury report on July 19, 2006. Using his own medical insurance, Hosea saw one physician on August 15, 2006 for a diagnosis, and another physician on September 10, 2006 for medical treatment. He did not, however, apply for workers' compensation benefits or seek medical treatment through his employer's health center. Hosea was assigned to light duty at Sky Harbor Airport, which allowed him to work full time. He used about 300 hours of sick leave and 265 hours of vacation leave in order to continue working as a firefighter and "extend out as far as [ he ] could."

¶ 5 On May 17, 2007, Hosea was examined by a physician's assistant at the Phoenix Fire Department's Health Center. After examining him and reviewing his previous medical records, the physician's assistant recommended that Hosea "continue on full duty status." Hosea had not made the Health Center aware of his injury or physical limitations until that date.

¶ 6 One week later, on May 24, 2007, Hosea filed an application for an accidental disability pension with the City of Phoenix Fire Pension Board ("Board"). He requested disability benefits arising from the July 9, 2006 injury, effective May 31, 2007, the same day as the end of the DROP period. He attached medical records in support of his application. Hosea worked on full duty status as a firefighter until May 31, 2007, the last day of the DROP period.

¶ 7 At a meeting held on June 15, 2007, the Board declined to send Hosea to a medical board for an examination and denied his application for an accidental disability pension because there was no "compelling evidence that [he] left the workforce because of his disability." The Board granted Hosea normal retirement beginning June 1, 2007. In a letter to Hosea dated June 20, 2007, the Board indicated that it denied the application "after determining that the medical evidence submitted by you did not indicate your condition(s) caused you (or would have caused you) to have to terminate your position and retire." Hosea requested a rehearing after which the Board unanimously upheld its earlier decision, finding that Hosea did not terminate his employment "by virtue of the disability" but "by virtue of [DROP]."

¶ 8 On November 30, 2007, Hosea filed a complaint seeking judicial review of the Board's decisions in the superior court. Following oral argument, the court affirmed the Board's denials of Hosea's application. After entry of final judgment, Hosea filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 38–847(J) (Supp.2009), 12–913 (2003) and 12–120.21(A) (2003).

## DISCUSSION

¶ 9 On appeal, Hosea argues that the Board violated the terms of the System by denying his application for accidental disability benefits without appointing a medical board and that its decision was an abuse of discretion, arbitrary and capricious and contrary to law. He thus claims the superior court erred in affirming the Board's action. *See* A.R.S. § 12–910(E) (2003)(superior court shall affirm agency action unless it "is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion").

## Standard of Review

¶ 10 We view the evidence in the light most favorable to upholding the decision of the administrative agency and will "affirm the decision unless it is arbitrary, capricious, or an abuse of discretion." *Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 224, 860 P.2d 487, 491 (App.1993). In reviewing the superior court's ruling upholding the administrative decision, "we independently examine the record to determine whether the evidence supports the judgment." *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7, 48 P.3d 505, 507 (App. 2002). "Neither this court nor the superior court may substitute its judgment for that of the agency on factual questions or matters of agency expertise ... [but][w]e apply our independent judgment, however, to questions of law, including questions of statutory interpretation...." *Id.* (citations omitted). Further, even if "there is room for two opinions and we believe that an erroneous conclusion has been reached," we will not set aside the decision of an administrative agency unless "there has been 'unreasoning action, without consideration and in disregard for facts and circumstances.'" *Petras v. Ariz. State Liquor Bd.*, 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981) (quoting *Tucson Pub. Schools, Dis. No. 1 of Pima County v. Green*, 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972)). *See also Woerth v. City of Flagstaff*, 167 Ariz. 412, 417, 808 P.2d 297, 302 (App.1990) (administrative decision supported by competent evidence may not be set aside as being arbitrary and capricious).

## Refusal to Appoint Medical Board

¶ 11 Hosea argues that a finding of accidental disability by the Board can only be based on medical evidence provided by a medical board under the provisions set forth in A.R.S. § 38–859 (Supp.2009). He contends that the Board's refusal to appoint a medical board before denying Hosea's application for accidental disability benefits violated the terms of the System. *See* A.R.S. § 38–847(E)(Supp.2009) ("A local board shall have no power to add to, subtract from, modify or waive any of the terms of the system, change or add to any benefits provided by the system or waive or fail to apply any requirement of eligibility for membership or benefits under the system."). He also claims that the Board's decision was arbitrary, capricious and an abuse of discretion. The Board responds that it was not required to appoint a medical board in this case because Hosea did not meet the threshold eligibility criterion for an accidental disability pension under A.R.S. § 38–844(B) (Supp.2009).[1] We agree with the Board that medical evidence of a purported accidental disability is unnecessary when the alleged disability could not have been a cause of the member's retirement.

¶ 12 Pursuant to A.R.S. § 38–844(B), "A member is eligible for an accidental disability pension if the member's employment *is terminated by reason of accidental disability*." (Emphasis added.) An "accidental disability" is defined as "a physical or mental condition that the local board[2] finds totally and permanently prevents an employee from performing a reasonable range of duties within the employee's job classification and that was incurred in the performance of the employee's duty." A.R.S. § 38–842(1)(Supp.2009). A finding of accidental disability "*shall* be based on medical evidence by a physician or clinic appointed by the local board." A.R.S. § 38–859(C) (emphasis added). Further, "All employees *shall* undergo medical examinations before a physician or clinic appointed by the local board" and an employee who fails to comply with such an examination, "waives all rights to disability benefits." A.R.S. § 38–859(D)(emphasis added). Finally, the examining physician or clinic "*shall*

---

1. There are three statutory grounds for disqualification from eligibility for an accidental disability pension: (1) "An injury suffered while engaged in a felonious criminal act or enterprise. (2) Service in the armed forces of the United States that entitled the member to a veteran's disability pension. (3) A physical or mental condition or injury that existed or occurred before the member's date of membership in the system." See A.R.S. § 38–844(D) (Supp.2009).

2. The "Local board" means "the retirement board of the employer, who are persons appointed to administer the system as it applies to their members in the system." A.R.S. § 38–842(30) (Supp. 2009).

report the results of the examinations to the local board." A.R.S. § 38–859(E) (emphasis added).

¶ 13 Hosea argues that because of the mandatory language found in A.R.S. § 38–859, the Board was required to appoint a medical board when Hosea applied for an accidental disability pension. In support of his argument, Hosea relies on the legislative history of former A.R.S. § 38–844(C) that had provided in part that the "board shall have the right to waive the requirement for a medical examination if it determines that such an examination is unnecessary." He also refers to statutory changes to former A.R.S. § 38–842(1) that had allowed a finding of disability "based on medical evidence satisfactory to the Board." In 1983, the legislature amended this sentence to require that "a finding of accidental disability shall be based on medical evidence by a doctor or clinic appointed by the local board." *See* 1983 Ariz. Sess. Laws, Ch. 300, § 4 (1st Reg. Sess.). He contends that these amendments reflect the legislature's intent to prohibit the local board from making a decision on an application for a disability pension in the absence of a medical examination.

¶ 14 Here, however, the Board denied Hosea's application for a disability pension based on its finding that he terminated his employment "because his DROP period had expired," rather than "by reason of accidental disability," as controlled by A.R.S. § 38–844(B). On the record before us, the Board's action was based on substantial evidence and therefore, was neither arbitrary and capricious, nor an abuse of discretion.

¶ 15 At the rehearing on Hosea's application, Board member Tobin told Hosea that to decide in his favor, the Board had to find that Hosea suffered an injury that occurred in the performance of his duties, that the injury prevented him from performing a reasonable range of duties, that the injury was total and permanent, and that "the reason for your termination of your employment must be the disability." Tobin added that, "[o]ur concern, Tom, is you worked your last day on the Phoenix Fire Department on a fire truck

prior to retirement. . . . You were on duty that day in the capacity of a full time firefighter at the airport."

¶ 16 In explaining why the Board was having "a difficult time" sending Hosea for an independent examination, Tobin observed that Hosea did not seek workers' compensation benefits or treatment at his employer's health center and his employer had no knowledge of his alleged inability to perform his duties. He remarked that, although Hosea claimed to be permanently disabled, two weeks prior to that he had worked on a Phoenix fire truck. He continued,

> if you had a job-related injury that occurred in the performance of your duties, those injuries are covered by work[ers'] compensation and you should have been on industrial during that time. When you're off on sick leave, the appearance is that you're off on a personal medical illness, not a work-related injury.

Hosea, however, explained that he did not pursue this course of action because "they would have taken me out of the field in a minute," and that "firemen always would rather be on duty than sitting in waiting rooms and going to doctors' appointments and being on light duty. . . ."

¶ 17 Hosea admitted, however, that except for paid leave, he had worked the full sixty months of the DROP period.[3] He also stated that he understood the board's skepticism, and that "it's kind of a remarkable coincidence that my [DROP] came up the same time I would have had to quit." As Tobin observed, "by his own admission," Hosea continued working as long as he could because "he had a [DROP] dead date for retiring." He stated, "the record shows that you left the Phoenix Fire Department employment . . . because your [DROP] period expired. It wasn't because you were disabled. It was because you finished out as far as you could go on the [DROP]." He continued, "This is why we denied your initial application." Hosea responded, "True. True." Tobin concluded that "the bottom line is [Hosea] work[ed] his last day on a fire truck. He

---

3. Although under A.R.S. § 38–844.03(C), Hosea could have continued to work beyond the DROP period, the record reflects he had no intention of doing so.

was not totally and permanently disabled the day he left. He worked."

¶ 18 Board member Zuercher also observed that Hosea was employed as a firefighter for the full sixty months and had "worked the last day possible under the [DROP] period that he could work as a full-duty, on-duty firefighter." Board member Larsen explained that "the first criteria that has to be met is did [you] leave the work force because of [your] injury or for some other reason. When the record is that you worked your last day, we didn't have any indication that you couldn't work beyond your last day."

¶ 19 Tobin later remarked that "you were working in your full capacity just prior to your retirement date.... [W]hen you're working on one day, unless something happens on that day to subsequently change your status, the very next day you can't be totally and permanently disabled." Board Member Moore agreed with this conclusion.

¶ 20 The evidence supports the Board's decision that Hosea was not eligible to receive disability benefits because he did not terminate his employment by reason of accidental disability. After Hosea's July 9, 2006 injury, using his own medical insurance, he saw a physician for a medical diagnosis on August 15, 2007 and a second physician for treatment on September 10, 2007. Although he reported the injury to his employer, he did not apply for workers' compensation benefits, nor did he then seek treatment through his employer's health center. Instead, he used paid sick leave when required by his injury. According to Hosea, he did this because he did not want to be taken "out of the field," but instead wanted to extend his career as long as he could.

¶ 21 On May 17, 2007, Hosea was examined for the first time by a physician's assistant at the Phoenix Fire Department's Health Center. The physician assistant recommended that Hosea continue working on full duty status. One week later, he applied for an accidental disability, pension that was to begin on May 31, 2007, "coincidentally" the last day of the DROP period. Nonetheless, Hosea worked as a "full-duty, on-duty firefighter" through May 31, 2007. Notwith-standing his explanation as to why he waited so long to apply for an accidental disability pension, given the "remarkable" coincidence that the DROP date was the same as the date of his alleged disability and the other uncontested facts before it, the record justifies the Board's conclusion that Hosea did not terminate his employment by reason of accidental disability. Because Hosea did not meet the initial statutory requirement for eligibility under A.R.S. § 38–844(B), the Board was not required to appoint a medical board before denying his application for disability benefits.

¶ 22 Hosea nonetheless maintains that despite the facts before it, as a matter of law, the statutory scheme does not afford the Board the discretion to reject his application for an accidental disability pension without first referring him to a medical board for an examination, and that the Board therefore acted contrary to law in refusing to do so. We, however, disagree.

¶ 23 We begin by noting that in construing statutes, we interpret them so as "to 'find and give effect to legislative intent'" and to give them "a fair and sensible meaning." *Walter v. Wilkinson*, 198 Ariz. 431, 432, ¶¶ 6, 10 P.3d 1218, 1219 (App.2000) (interpreting statute requiring mental health experts to conduct examinations "simultaneously" to mean within a "short time frame," not at "precisely the same time"). "If statutory language is clear and unambiguous, it is normally conclusive unless clear legislative intent to the contrary exists or impossible or absurd consequences would result." *Bustos v. W.M. Grace Dev.*, 192 Ariz. 396, 398, 966 P.2d 1000, 1002 (App.1997). We construe statutory provisions "'in light of their place in the statutory scheme,' so 'they may be harmonious and consistent.'" *State v. Flynt*, 199 Ariz. 92, 94, ¶ 5, 13 P.3d 1209, 1211 (App.2000) (citations omitted).

¶ 24 Reading the applicable statutes together, we interpret them to mean that when the Board subsequently *makes* a "finding of accidental ... disability" in determining whether to grant an accidental disability pension, such finding must be based on "medical evidence" provided by a medical board. *See*

A.R.S. § 38–859(C). The statutory scheme does not require, as Hosea suggests, that the Board appoint a medical board in every instance in which a member applies for an accidental disability pension, when, as here, such a procedure is wholly unnecessary and such a conclusion absurd. *See Pinal Vista Properties, L.L.C. v. Turnbull,* 208 Ariz. 188, 193, ¶ 17, 91 P.3d 1031, 1036 (App.2004) ("Statutes cannot be interpreted to require a futile act."). In this case, the appointment of a medical board would have been futile, and Hosea's interpretation of the statutes to mandate that requirement in all cases would lead to an absurd consequence not intended by the legislature.

¶ 25 Hosea finally asserts that the Board's decision was contrary to law because the Board erroneously assumed that Hosea's participation in the DROP precluded him from receiving an accidental disability pension. Hosea relies on *Parkinson v. Guadalupe Pub. Safety Ret. Local Bd.,* 214 Ariz. 274, 151 P.3d 557 (App.2007), to support his claim that a member can receive an accidental disability pension if he meets the statutory requirements for an accidental disability, even if he has other reasons for terminating his employment.

¶ 26 Parkinson was a fire chief who suffered a neck injury on the job in 2000 but returned to work in 2001. *Id.* at 275, ¶ 2, 151 P.3d at 558. His medical condition was not resolved by 2003. *Id.* On February 3, 2004, Parkinson was placed on paid administrative leave pending an internal investigation for alleged misconduct. *Id.* at ¶ 3. On February 6, 2004, Parkinson submitted an application for an accidental disability pension. *Id.* at ¶ 4. On February 17, 2004, Parkinson submitted a letter of resignation, and in July 2004, the Board approved his application for an accidental disability pension. *Id.* at 276, ¶¶ 5–6, 151 P.3d at 559. Because the Board subsequently received information questioning whether "the cause of Parkinson's resignation was an accidental disability," it conducted a rehearing. *Id.* at ¶ 6. Determining that Parkinson's resignation was not caused *solely* by his disability, it reversed its earlier order and denied the application. Parkinson appealed to the superior court. *Id.* at ¶ 10.

Finding that Parkinson had suffered a job-related injury and that he had resigned because of his disability, the court reversed the Board's decision. The Board appealed, and this court affirmed the judgment of the superior court. *Id.* at 277, ¶¶ 5–10, 151 P.3d at 560.

¶ 27 We held that even if one reason Parkinson resigned was because he feared the results of the investigation, "[n]o statute provides that a member's accidental disability must be the sole reason for his resignation or that the Board must find as a fact that a member's disability is the sole cause of the end of his employment." *Id.* at ¶ 15. We stated that "we do not find in the statutory scheme any requirement that a pension applicant have a single reason, an objectively credible reason or even a reasonable reason for seeking a pension." *Id.* at 278, ¶ 18, 151 P.3d at 561. We concluded that the Legislature intended that a member is eligible for a disability pension "if the Board finds that he suffers a medically documented disability, [and] that such disability is a cause of his decision to terminate employment." *Id.*

¶ 28 Hosea claims that *Parkinson* controls here. He contends that even if one reason for his termination of employment was because he was at the end of the DROP period, he is not precluded from receiving a disability pension if his other reason was his disability. Hosea therefore argues that the Board's refusal to process his application and appoint a medical board was contrary to the holding in *Parkinson.*

¶ 29 The Board has acknowledged that a member participating in the DROP could become disabled during the DROP period, terminate participation in the DROP, and be eligible for disability benefits. *See* A.R.S. §§ 38–844.06(B), –844.04(B)(4) (Supp.2009). But it asserts, and we agree, that the facts of this case are distinguishable from those in *Parkinson.* Here, Hosea was continued on full status duty on May 17, 2007 and worked until the last day of the DROP, which was May 31, 2007. Because of the DROP, it was advantageous for him to retire on May 31, 2007, which he did. Rejecting his claim that his alleged disability could have been *a* reason, the evidence supports the Board's finding that *the sole* reason Hosea terminated his employment was because his DROP period

expired. Thus, under the express language of A.R.S. § 38–844(B), Hosea's employment was not terminated by reason of accidental disability, and he was not eligible for an accidental disability pension. *Parkinson* does not compel a different result.

## CONCLUSION

¶ 30 Because Hosea did not meet the threshold statutory eligibility requirement under A.R.S. § 38–844(B), the Board was not required to appoint a medical board under the provisions of A.R.S. § 38–359 or otherwise process his application for disability benefits before denying it.[4] We accordingly affirm the judgment of the superior court. Hosea has requested an award of attorneys' fees on appeal pursuant to A.R.S. § 12–348(A)(2), which we deny. We award the Board, as the prevailing party, its costs on appeal subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PHILIP HALL and JOHN C. GEMMILL, Judges.

---

4. The Fund Manager of the System submitted a brief in support of the Board as an *amicus curiae* pursuant to Rule 16(c), Arizona Rules of Civil Appellate Procedure, in support of the Board.

The Fund Manager raises additional issues to which Hosea has responded in an Answering Brief. Because of our resolution of this appeal, we need not address those issues.