NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TODD PASCARELLA, *Plaintiff/Appellee,*

*v.*

MESA POLICE PENSION BOARD, et al., *Defendants/Appellants.*

No. 1 CA-CV 19-0086
FILED 1-14-2020

Appeal from the Superior Court in Maricopa County
No. LC2018-000049-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Yen Pilch & Landeen, P.C., Phoenix
By Neil Landeen
*Counsel for Plaintiff/Appellee*

Ryan Rapp & Underwood, P.L.C., Phoenix
By David L. Niederdeppe, Cynthia K. Kelley
*Counsel for Defendants/Appellants*

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Diane M. Johnsen joined.

**J O N E S**, Judge:

**¶1** The Mesa Police Pension Board (the Board) appeals from the superior court's judgment reversing the Board's denial of Todd Pascarella's application for an accidental disability pension pursuant to Arizona Revised Statutes (A.R.S.) § 38-844(B). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Pascarella worked as a police officer for the City of Mesa (the City) from the end of 2005 through the summer of 2017.[1] As such, he was a member of Arizona's Public Safety Personnel Retirement System (APSPRS) and eligible to apply for an accidental disability pension if his employment was terminated "by reason of accidental disability." A.R.S. § 38-844(B).[2] Accidental disability is defined by statute as "a physical or mental condition that the local board finds totally and permanently prevents an employee from performing a reasonable range of duties within the employee's job classification and that was incurred in the performance of the employee's duty." A.R.S. § 38-842(1).

**¶3** In August 2017, Pascarella applied for an accidental disability pension from APSPRS, identifying "PTSD, major depressive disorder, panic disorder, [and] generalized anxiety" as the nature and cause of his disability, and citing August 31, 2016 as the date of the "disabling event." Pascarella also attached an "injury timeline" to his application that explained the circumstances he believed were relevant to his claim.

---

[1] "We view the evidence in the light most favorable to upholding the [Board's decision]." *See Hosea v. City of Phx. Fire Pension Bd.*, 224 Ariz. 245, 248, ¶ 10 (App. 2010) (citing *Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 224 (App. 1993)).

[2] Absent material changes from the relevant date, we cite a statute's current version.

**¶4**        According to Pascarella's timeline, in August 2016, the City began investigating his conduct during an on-duty incident that occurred in June.  As the investigation proceeded, Pascarella began to fear he would lose his job.  These circumstances caused him overwhelming stress and were the "onset of [his] symptoms."  On August 30, Pascarella was put on administrative leave pending the outcome of the investigation.  The following day, Pascarella's attorney advised him that the City had concerns about his June conduct.  That news caused Pascarella to "f[a]ll into a major depressive state, suffer[] anxiety,  . . . hav[e] panic attacks[,] . . . [and experience] sleeping problems."  Pascarella also alleged the "entire investigation was motivated by revenge" since Pascarella was unknowingly recorded criticizing fellow officers' response to a situation involving Pascarella's and an officer-in-training's pursuit of a murder suspect in March 2015.

**¶5**        Pascarella also submitted medical records to support his accidental disability pension application.  According to the records, Pascarella's primary care physician prescribed him medication for anxiety within a few weeks after Pascarella learned he might be disciplined.  Pascarella also related a March 2017 incident in which he experienced stress-related gastrointestinal bleeding.  A few months later, Pascarella sought psychiatric treatment for stress, which he asserted was caused by being "charged inappropriately" in the internal affairs investigation.

**¶6**        After reviewing Pascarella's application, the Board determined that his disabling condition, namely PTSD, arose from the internal affairs investigation rather than a "line of duty triggering event."  Accordingly, the Board found the condition was not "incurred in the performance" of his duty as a police officer and did not qualify as an accidental disability within the meaning of A.R.S. § 38-842(1).  *See* Procedures of the Mesa Fire and Police Pension Boards (Procedures), at ¶ 12 (discussing disability benefit applications), https://www.mesaaz.gov/home/showdocument?id=19642 (last visited Jan. 7, 2020); https://www.mesaaz.gov/city-hall/advisory-boards-committees/public-safety-personnel-retirement-system (follow "Procedures" hyperlink).  After the Board denied his application, Pascarella applied for and was granted a rehearing.  *See* A.R.S. § 38-847(H); Procedures, at ¶ 17.

**¶7**        At the rehearing, Pascarella suggested the disabling event was the March 2015 pursuit of the murder suspect, rather than the August 2016 internal affairs investigation as he had originally claimed.  Pascarella explained that in March 2015, he was training a "rookie that [he]'d known

only a few days" when the rookie had to ram the patrol vehicle, in which Pascarella was a passenger, into a murder suspect's vehicle to prevent the suspect from harming children on a nearby elementary school playground. Pascarella described the incident, explaining they had to "use force [to] stop this guy at all costs," which was "not normal." He also felt "helpless" based on his perception that other officers at the scene did not respond appropriately.

¶8            Pascarella offered additional medical documentation to support the March 2015 injury date, including an August 18, 2017 letter from a psychiatrist, Dr. Rosengard. According to Dr. Rosengard, Pascarella suffered from PTSD, depression, generalized anxiety disorder, and panic attacks stemming from "a critical incident in March of 2015 and subsequent repercussions that were taken against [Pascarella] for actions that seemed to be otherwise appropriate."[3] Dr. Rosengard also explained the role of the internal investigation in Pascarella's mental condition, adding:

> As a continuation of this [critical March 2015 incident], there
> was another incident where [Pascarella] w[as] treated badly
> by [his] management and that further exacerbated an already
> fragile mental state. As a result of the initial critical incident
> further magnified by the second incident [Pascarella] w[as] in
> a state that disable[d] [him] from work.

A separate psychiatric assessment, dated August 21, 2017, indicated Pascarella reported a "history of witnessing violence/crime/battling with criminal[s]/being subject of the traumatic events (work related) over years" that caused impairment of his "work and social life."

¶9            After considering the new information, the Board noted that Pascarella did not provide any evidence that he sought medical treatment immediately following the March 2015 incident and that, while that event was stressful, Pascarella simply acted "in the normal course of what [it]

---

[3]        At the rehearing, Pascarella's counsel asserted the Board had been earlier presented with a handwritten version of Dr. Rosengard's now-typed August 18, 2017 letter at the original hearing. However, the Board "had trouble reading it, so after the meeting," Pascarella asked Dr. Rosengard to "clarify what his chicken scratch handwriting was" for the rehearing. Regardless, according to the Board's Procedures, "[t]here shall be no limit on the Board's ability to accept and review relevant medical evidence," Procedures, at ¶ 12(F), and the record indicates the Board accepted Dr. Rosengard's typed letter at the rehearing.

expect[ed] police officers to do." The Board affirmed its denial of Pascarella's application.

¶10 On review, the superior court reversed the Board's decision, finding it was "not supported by substantial evidence, was contrary to law, and constituted an abuse of discretion" and remanded for the Board to appoint an independent medical examiner (IME). *See* Procedures, at ¶ 12(F) ("Board action on a disability benefit application shall be based on medical evidence by the independent medical examiner appointed by the Board."); *see also* A.R.S. § 38-859 ("A finding of accidental, ordinary, temporary, or catastrophic disability shall be based on medical evidence by a designated physician or a physician working in a clinic that is appointed by the local board . . . that established the disability."). The Board timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 12-913,[4] and 38-847(D)(3), (J).

## DISCUSSION

¶11 The Board argues the superior court erred in reversing its denial of Pascarella's application. On appeal, we "review *de novo* the superior court's judgment, reaching the same underlying issue as the superior court: whether the [local board's] action was not supported by substantial evidence or was illegal, arbitrary and capricious, or involved an abuse of direction." *See Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13 (App. 2007) (citing *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 378, ¶ 14 (App. 1998)); *see also Brodsky v. City of Phx. Police Dep't Ret. Sys. Bd.*, 183 Ariz. 92, 94-95 (App. 1995) (citing *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods.*, 167 Ariz. 383, 386 (App. 1990)). To be sure, "[n]either this court nor the superior court may substitute its judgment for that of the agency on factual questions or matters of agency expertise." *Carlson*, 214 Ariz. at 430, ¶ 13 (quoting *Webb v. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 557, ¶ 7 (App. 2002)). However, we apply our independent judgment to questions of law, including questions of statutory interpretation. *Id.* (quoting *Webb*, 202 Ariz. at 557, ¶ 7).

¶12 As an initial matter, the parties seemingly dispute which event — the March 2015 or the August 2016 — forms the basis of

---

[4] Although A.R.S. § 12-913 expressly allows a party to appeal to the "supreme court," we have construed this provision as "also allowing an appeal to the court of appeals, which was created after [A.R.S.] § 12-913 was enacted." *Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014) (collecting cases).

Pascarella's application for accidental disability pension. The record reflects that, on rehearing, the Board allowed Pascarella to supplement the record with medical documentation and personal explanation to demonstrate his disabling condition originated in March 2015. *See* Procedures, at ¶ 12(F) (permitting the Board to accept and review relevant medical evidence with "no limit"). The Board then considered the merits of Pascarella's assertion that the relevant event occurred in March 2015; the Board's comments indicate it considered whether the March 2015 incident was sufficiently stressful to cause a disabling condition, as well as whether Pascarella indeed suffered a disabling condition thereafter. Because the Board based its decision on the merits of Pascarella's amended claim, any discussion of the August 2016 event is irrelevant to the Board's apparent determination that Pascarella did not suffer a documented injury following the March 2015 incident.

**¶13**        The Board argues the superior court failed to give deference to its determination that Pascarella failed to offer sufficient evidence of a medical condition, incurred in the course of his employment in March 2015, to warrant appointment of an IME to evaluate his claim. But the record contains an opinion from a medical professional that identified the March 2015 on-duty event, along with "subsequent repercussions" from that event, as the impetus for Pascarella's disabling condition. A second medical record from August 2017 also identifies "work related" traumas that caused Pascarella physical and emotional impairment. While we may not substitute our judgment for that of the Board's, *see Carlson*, 214 Ariz. at 430, ¶ 13 (quoting *Webb*, 202 Ariz. at 557, ¶ 7), nor is the Board free to ignore undisputed medical evidence.

**¶14**        Here, Pascarella presented medical evidence — however slim — to support his claim that he suffered a permanent, disabling condition during the course of his employment as a law enforcement officer. The Board abused its discretion in substituting its own lay understanding of medical causation for that of a medical professional. *Cf. Hosea*, 224 Ariz. at 250-51, ¶ 24 ("[I]n determining whether to grant an accidental disability pension, such finding [of accidental disability] must be based on 'medical evidence' provided by a medical board.") (citing A.R.S. § 38-859(C)); *Siqueiros v. Indus. Comm'n*, 20 Ariz. App. 104, 109 (1973) ("[T]he law is clear that the medical causation question can be resolved only by expert medical testimony, and that the [administrative agency] has an obligation not to ignore all the sworn evidence of the hearing without further hearing or medical evidence.").

¶15        The Board nonetheless relies on *Hosea*, 224 Ariz. 245, to argue that further review of Pascarella's application by an IME is unnecessary because Pascarella does not meet the statutory prerequisites for an accidental disability pension.  In *Hosea*, this Court found no error in the denial of an application for accidental disability pension where an IME would have been futile.  *Id.* at 251, ¶ 24 (citing *Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 193, ¶ 17 (App. 2004)).  But in *Hosea*, the Board determined the applicant did not qualify for disability retirement because he terminated his employment for a reason other than disability.  *Id.* at 251-52, ¶ 29.  We agreed that, under those circumstances, further medical evidence was irrelevant to the claimant's eligibility for the pension and therefore appointment of an IME was unnecessary.  *Id.* at 252, ¶ 30.

¶16        Here, however, the denial of Pascarella's application is based upon the existence, nature, and origin of the condition Pascarella asserts entitles him to an accidental disability pension.  Under these circumstances, further exploration through an IME would not be futile; rather, the IME will likely provide valuable, objective information regarding the merits and substance of Pascarella's claims that will assist the Board in determining whether his application should be granted.  Accordingly, *Hosea* does not compel reversal.

## CONCLUSION

¶17        The superior court's order reversing the Board's denial of Pascarella's application for an accidental disability pension and remanding for appointment of an IME is affirmed.

¶18        Pascarella requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12-348(A)(2) (authorizing an award of fees to a party who "prevails by an adjudication on the merits in . . . [a] court proceeding to review a state agency decision").  Because our decision does not finally determine Pascarella's claim for an accidental disability pension on its merits, the request is premature and denied without prejudice.  *See 4501 Northpoint L.P. v. Maricopa Cty.*, 212 Ariz. 98, 101-02, ¶¶ 16-20 (2006).  As the prevailing party, however, Pascarella is awarded his costs incurred on appeal upon compliance with ARCAP 21(b).  *See* A.R.S. § 12-341.