NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DONALD WELZ, *Plaintiff/Appellant,*

*v.*

LAKE HAVASU CITY, a Municipal Subdivision of the State of Arizona,
*Defendant/Appellee.*

No. 1 CA-CV 13-0390
FILED 07-03-2014

---

Appeal from the Superior Court in Mohave County
No. S8015CV201001407
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

---

COUNSEL

Baird Williams & Greer LLP, Phoenix
By Craig M. LaChance
*Counsel for Plaintiff/Appellant*

Grasso Law Firm PC, Chandler
By Robert Grasso, Jr., Kim S. Alvarado
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        Appellant Donald Welz was terminated as an officer with the Lake Havasu City Police Department.   After exhausting his administrative remedies, Welz filed a special action petition with the Mohave County Superior Court, appending thereto and within the same cause number, state civil claims of breach of contract and wrongful termination.  Welz also asserted, for the first time within the special action and only in response to Appellee Lake Havasu City's motion for summary judgment, that there was fraud on the hearing officer by Lake Havasu City because it failed to disclose to the hearing officer and to Welz what Welz believed to be the true reason for his termination.  Thereafter, the trial court granted summary judgment in favor of Lake Havasu City, resolving the special action proceeding and Welz's state law claims. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Welz served as an officer for Lake Havasu City from 1998 through 2000.   After leaving the police department to pursue other ventures, Welz was rehired by the Lake Havasu City Police Department in 2007.

¶3        In 2008, Welz received multiple disciplinary sanctions.  First, Welz received a counseling memorandum on September 12, 2008, as the result of rude comments he admitted making to a citizen during a service call on July 11, 2008.  Thereafter, on October 2, 2008, he received a written reprimand following the filing of a complaint against him as a result of his role in a non-law enforcement related civil landlord/tenant dispute.  The reprimand came about as a result of Welz having recommended, while on duty, the tenant rent a room from a friend of his; the making of such recommendations being against department policy.  Further, he failed to notify his supervisor of the deteriorating landlord/tenant situation, which could have brought disrepute upon the department. Welz was disciplined a third time on September 27, 2008, when he failed to notify dispatch of

his whereabouts for approximately two hours while on patrol, and did not acknowledge dispatch's numerous attempts to contact him. Later, it was determined that, during this time period, Welz checked on two bars on his beat, and caused a one-vehicle accident when his patrol vehicle collided with a water line at one of the bars. For this third transgression, on October 15, 2008, Welz received a forty hour suspension and was placed on disciplinary probation for a year. Consistent with Lake Havasu City's Personnel Rules and Regulations (PR & R), Welz sought administrative review by the police chief, who upheld the one year probation, but reduced Welz's suspension to twenty hours.

¶4        The events ultimately triggering Welz's dismissal began on February 12, 2009, when Welz went golfing with three fellow officers. Welz's group was apparently playing at a slow pace, and by the third hole they had already allowed two other groups to play through. After Welz's group completed the third hole, and as they were leaving the green, a golfer in a group behind Welz's group hit a shot that nearly struck one of the officers. In response, Welz picked up the golfer's ball and placed it in his pocket. Upon failing to locate his ball, the golfer approached Welz's group to ascertain if they had seen it. Rather than admit he took the ball, Welz denied having seen it, and pretended to help the golfer look for the lost ball.

¶5        The following day, Welz recounted the story in the police department's locker room. Welz's supervisor, Sergeant Harrold, heard Welz's recitation of the events and asked if he was describing a theft. Welz responded, "Yeah, I guess we are. Call the cops." After confirming the story with the officers who had golfed with Welz, Sergeant Harrold initiated an internal complaint against Welz.

¶6        Lieutenant Whittaker was assigned to investigate the complaint and interviewed Welz about the golfing incident on February 19, 2009. When made aware of the complaint, Welz decried the complaint as ridiculous and the result of a personal vendetta against him by Sergeant Harrold. Welz then gestured in the direction of Sergeant Harrold's desk and said, "Maybe I should just put a bullet in him and get this over with." Lieutenant Whittaker then read Welz his "Warning and Assurance to Employee Required to Provide Information," and informed Welz of his right to have a Police Officers Association representative present during the interview; Welz exercised that right. As he left to locate his representative, Welz removed his department issued gun and taser and placed them on Lieutenant Whittaker's desk while commenting that he "might want to use [the weapons] on someone" and that he "better leave

them with [the lieutenant]." Welz claimed his comments were sarcastic, but it did not appear to Lieutenant Whittaker that Welz was joking.

¶7            Welz returned to Lieutenant Whittaker's office with his Association representative and completed a recorded interview. He admitted picking up the ball, placing it in his pocket, and still having possession of it. Welz explained he took the ball because another officer in the group was becoming very upset at the group behind them and Welz hoped to diffuse any potential for violence or confrontation between the groups. He further explained that golf is a "gentleman's game" and, as a result, people "will do, if you will, sneaky shit like that to get their point across." Welz also admitted telling the golfer he had not seen the golf ball and pretending to help the golfer find his ball "to make the story believable, so to speak." At the conclusion of the interview, Welz was given a "Notice of Administrative Suspension" that was effective immediately. Thereafter, Lieutenant Whittaker drafted a report asserting Welz had violated three sections of the Lake Havasu City's PR & R,[1] as well as two provisions of Lake Havasu City's Police Department General Orders,[2] and recommended Welz be dismissed; he then referred the matter "to the executive staff for review."

---

[1] He was found to have violated the following provisions of Section 405C of the PR & R:

> 3. The employee has been abusive in attitude, language, behavior, or conduct toward a fellow employee, a supervisor, or the public; or other action has resulted in physical harm, injury, or fear of same to such persons.
>
> 6. The employee has stolen public or private property, misappropriated City funds, or has been an accomplice in any of these practices while employed by the City of Lake Havasu.
>
> 9. The employee has engaged in conduct, on or off duty, that is of such a nature that it causes discredit to the City.

[2] He was found to have violated General Order 14.1.5-Code of Conduct:

> C.8. Unbecoming Conduct: Employees shall conduct themselves in a manner that will reflect favorably upon the

¶8 On March 2, 2009, after reviewing Lieutenant Whittaker's report, Captain Fiumara issued a "Notice of Intent to Terminate" to Welz. Welz then sought, and received, an administrative review of the termination decision by Police Chief Doyle. At the review, Welz again admitted taking the ball and explained that the comments made in regard to Sergeant Harrold were "stupid sarcastic statements." On March 12, Chief Doyle adopted the recommended disciplinary action – termination – effective immediately. In so doing, he explained the decision was based upon the totality of the circumstances; Welz took the golf ball, pretended to help locate the ball, showed no remorse regarding the entire situation, and then made threatening statements regarding a supervisor.

¶9 Welz appealed the termination, and an adversarial termination hearing was held on June 29, 2009. Following the hearing, the hearing officer found "that substantial and credible evidence exists to show that Welz's actions were in violation of the City's Personnel Rules and Regulations and that some form of discipline is appropriate." Further, he found that, even with all of Welz's past transgressions, "Welz could probably have saved his job but he allowed the incident to deteriorate further when he bragged about stealing the golf ball, when he made a veiled threat against his supervisor and when he attempted to justify his [golf course] actions." Ultimately, the hearing officer confirmed Welz's dismissal, summarizing his determination as follows:

> There is nothing autocratic about Chief Doyle's conclusions that, because of Welz's unprofessional conduct, he should not continue as a Lake Havasu City police officer. Since Welz avoided responsibility for his actions and tried to deflect his actions from misconduct to admirable behavior, since Welz's excuses about his misconduct were lame and since Welz's impulsive sarcasm when summoned to account for his misconduct has been a hallmark of his overall

_____

Police Department. Conduct unbecoming shall include that which can be demonstrated as bringing the Police Department into disrepute, as reflecting discredit upon an employee, or impairing the operation or efficiency of the employee or Police Department . . . .

j. Violation or attempted violation of any federal or state law or city ordinance.

attitude, Chief Doyle had cause to implement serious disciplinary action. Violations of the Personnel Rules and Regulations have been proven by a preponderance of evidence, Welz's volatility has been laid bare and, because he was on disciplinary probation at the time of the most recent misconduct in February 2009, Chief Doyle properly exercised his discretion to dismiss Welz from his position. No evidence exists to show that Chief Doyle was improperly influenced to make his decision about dismissal, that the dismissal decision was made hastily or that the decision to dismiss Welz was not based on reasonable cause.

¶10          Welz then brought a special action in the Mohave County Superior Court,[3] seeking review of his termination;[4] he also asserted claims, independent, but derivative of the administrative review, against

---

[3] Welz originally filed a complaint in the trial court against Lake Havasu City for wrongful termination and breach of contract, and also against individual officers for negligence. Following Lake Havasu City's motion to dismiss, Welz amended his complaint to convert the matter into a special action, *see Woerth v. City of Flagstaff*, 167 Ariz. 412, 417, 808 P.2d 297, 302 (App. 1990) ("[T]he only remedy available to [the plaintiff] to challenge the propriety of the [personnel board's] decision is by special action."), amended his negligence claim to an intentional tort claim, and added a civil rights claim pursuant to 42 U.S.C. § 1983. The intentional tort claim was dismissed for failure to comply with the notice of claim statute. *See* Ariz. Rev. Stat. (A.R.S.) § 12-821.01(A). Welz then removed the action to the federal district court. The district court granted summary judgment for Lake Havasu City on Welz's § 1983 claim and remanded the remaining state claims back to the trial court.

[4] The right to appeal exists only when specifically created by statute. *Woerth*, 167 Ariz. at 416, 808 P.2d at 301 ("The decision of an administrative body is final unless a statute authorizes an appeal."); *McLeod v. Chilton*, 132 Ariz. 9, 17, 643 P.2s 712, 720 (App. 1981). The Administrative Review Act authorizes such an appeal, *see* A.R.S. § 12-901 to -914, but exempts judicial review of administrative decisions issued by "any political subdivision, municipal corporation, or agency thereof." A.R.S. § 12-901; *Woerth*, 167 Ariz. at 416 n.4, 808 P.2d at 301 n.4. Also, A.R.S. §§ 38-1001 to -1007 authorizes judicial review of a Merit Council System decision to dismiss an officer. However, at the time of Welz's termination, Lake Havasu City had not yet adopted the Merit System; it since has. Lake Havasu City, Ariz., Code § 2.60.010 (2011).

Lake Havasu City for wrongful termination and breach of contract. Lake Havasu City answered and moved for summary judgment. In his response to the summary judgment motion, Welz asserted for the first time in the state court action that his firing was the result of a fraudulent scheme by the police department driven by budgetary concerns.[5] This allegation was founded upon the deposition of Michael Reynolds, a former lieutenant of the Lake Havasu City Police Department, in which Reynolds stated Chief Doyle implemented a reduction in force strategy that called for supervising officers to bolster the files of certain problem officers, including Welz, with disciplinary measures toward justifying those officers' terminations. The catalyst of this strategy, according to Reynolds, was the economic downturn and resultant budget cuts to the department.

¶11         The trial court affirmed Welz's termination, finding it was not arbitrary or capricious, and did not involve an abuse of discretion. Further, the trial court considered Reynolds's deposition, over Lake Havasu City's objection, and determined that, "assuming [Reynolds's testimony] to be true, the allegations in that deposition [did] not rise to the level of [Lake Havasu City] engaging in a fraudulent scheme to target [Welz] as a potential person to be fired . . . and to eventually have him being fired for no legitimate reason." It concluded that because "no 'scheme' existed it would not have been necessary to present evidence of the alleged scheme at the administrative review level." Thereafter, the trial court granted summary judgment in favor of Lake Havasu City. Welz timely appealed. We have jurisdiction pursuant to Arizona Rule of Procedure for Special Actions 8(a), A.R.S. §§ 12-120.21(A), and -2101(A).

**STANDARD OF REVIEW**

¶12         Municipal personnel boards are administrative bodies performing judicial functions. *Woerth v. City of Flagstaff*, 167 Ariz. at 416, 808 P.2d at 301. The decision of an administrative body is final unless a statute provides for appeal, and no such statute authorizes an appeal from a municipal personnel board decision. *Id.* at 416-17, 808 P.2d at 301-02. However, an employee, in certain circumstances, may seek judicial review

---

[5] Welz raised the issue initially in the federal district court. The district court, in granting summary judgment against Welz on his § 1983 claim, found his contention that Lake Havasu City suppressed evidence was "misplaced."

of the personnel board decision by way of a special action to the trial court, as Welz did here. *Id.* at 302, 808 P.2d at 417; see *supra,* ¶ 10 n.4.

¶13          In such a situation, the trial court is limited in its review to deciding "whether the administrative action was illegal in that it was arbitrary, capricious or involved an abuse of discretion." *City of Tucson v. Mills*, 114 Ariz. 107, 111, 559 P.2d 663, 667 (App. 1976); Ariz. R. Spec. Act. 3(c).  Under this standard, a trial court may set aside an administrative decision if unsupported by competent evidence. *Mills,* 114 Ariz. at 111, 559 P.2d at 667.

¶14          On an appeal from a special action, we conduct a two-part review of the trial court's rulings.  Initially, we determine whether the court assumed jurisdiction.  That having been the case here, "we then review its decision on the merits to determine whether it abused its discretion in granting or denying relief." *Cranmer v. State*, 204 Ariz. 299, 301, ¶ 7, 63 P.3d 1036, 1038 (App. 2003).  Any legal conclusions made by the trial court in reaching its decision we review de novo. *Id.*  "We view the evidence in the light most favorable to upholding the decision of the administrative agency." *Hosea v. City of Phx. Fire Pension Bd.*, 224 Ariz. 245, 248, ¶ 10, 229 P.3d 257, 260 (App. 2010).

## DISCUSSION

¶15          Welz contends on appeal that the trial court erred in two ways: 1) finding his termination was not arbitrary and capricious; and 2) declining to grant him a trial de novo on the fraud issue and determining he had failed to prove a fraudulent scheme existed.

### I.      Welz's Termination was not Arbitrary and Capricious

¶16          Welz argues his termination was arbitrary and capricious because it was not founded upon "just cause."  An administrative decision is arbitrary and capricious if unsupported by competent evidence. *Mills,* 114 Ariz. at 111, 559 P.2d at 667.  Contrary to Welz's contention, the record contains competent evidence to support the hearing officer's decision to uphold his dismissal.  The hearing officer found "Welz was on disciplinary probation at the time he stole a golf ball and potentially discredited the City by his actions of taking the golf ball and then pretending to help the golfer look for the lost ball, and . . . during an internal investigation into his conduct, Welz made an abusive comment directed against his supervisor, for which substantial and credible evidence of misconduct exists."  The decision concluded:

[D]ismissal is a reasonable disciplinary action, especially in light of the administration of prior discipline in the form of a 20 hour suspension and a written reprimand, which earlier disciplinary action resulted in the imposition of disciplinary probation for one year. Welz's misconduct that occurred four months after being placed on disciplinary probation and which was within the probationary period showed poor judgment and a lack of respect for the citizens of Lake Havasu City, his actions showed a callous disregard for the property rights of the citizens of Lake Havasu City, and his actions were in derogation of Police General Orders which required him to conduct himself in a manner that will reflect favorably upon the Police Department and to avoid conduct that is unbecoming to the Police Department such that it could bring the Police Department into disrepute or reflect discredit upon an employee. Moreover, his offhand, sarcastic remark about shooting his supervisor who he regarded as the source of his misfortunes, was abusive to a fellow employee who was also his supervisor. Dismissal is within the range of disciplinary actions for Welz's misconduct,[6] the decision of the Chief of Police to dismiss Welz was not arbitrary or capricious, the decision to dismiss is not an excessive disciplinary action given the circumstances of Welz's employment since 2006 and Welz's dismissal for violation of the City's Personnel Rules and Regulations does not shock one's sense of fairness.

On appeal, Welz again attempts to justify his actions on the golf course and explain away his threats against his supervisor as sarcastic. Welz does not, however, dispute having committed the violations for which he was charged. Absent a showing that the hearing officer's determination was unsupported by competent evidence, neither this court, nor the trial court, may substitute its judgment for that of the hearing officer. *See Woerth*, 167 Ariz. at 417, 808 P.2d at 302. In light of Welz's admissions of the very conduct used to support his termination, it cannot be said the hearing officer's determination was not supported by competent evidence.

---

[6] Section 405(H)(3) of the Lake Havasu City PR & R provides: "Employees who fail to successfully achieve disciplinary probation requirements or violate other personnel rules as outlined in the Grounds for Dismissal Section during the probationary period may be suspended, demoted or dismissed."

¶17 Rather, Welz argues the dismissal was arbitrary and capricious when compared to disciplinary action taken against other officers by the Lake Havasu City Police Department. In support of this argument, he cites *Maricopa County Sheriff's Office v. Maricopa County Employee Merit System Commission*, 211 Ariz. 219, 119 P.3d 1022 (2005), which noted that in rare situations, punishment may be found to be arbitrary even "when it falls within the permissible range." *Id.* at 222 n.6, ¶ 16, 119 P.3d at 1025 n.6.

¶18 A disciplinary action may be deemed arbitrary when "similarly situated employees receive differing sanctions for the same offense." *Id.* To support his argument, Welz presented several examples of other officers' transgressions and resulting disciplinary actions and compared them to his in this case. Welz failed, however, to sufficiently demonstrate he received a different sanction than was received by a similarly situated officer charged with the same offense. The closest factual circumstance proffered by Welz involved an officer who discovered a lost phone he believed abandoned and misappropriated it for his own use. That officer received a reprimand. The hearing officer considered this example and found it sufficiently distinguishable: "There is also a qualitative difference between Welz's action in taking the golf ball that he knew belonged to another golfer and the other officer who thought that the Blackberry had been abandoned." Also, the hearing officer noted no evidence had been presented of the other officer having a prior disciplinary history or being on disciplinary probation at the time of the incident. Welz's other examples fail for the same reason. Additionally, Welz ignores that his termination also rested upon his abusive and threatening statements toward a supervisor. None of Welz's proffered examples illustrate a similar action.

¶19 Welz also argues, again citing *Maricopa County Sheriff's Office*, that his punishment was vastly disproportionate to his infraction, thereby making it unreasonable. *See id.*, 211 Ariz. at 222 n.6, ¶ 16, 119 P.3d at 1025 n.6 ("[O]n admittedly rare occasions, a punishment could be so unreasonably disproportionate to the offense as to be arbitrary and without reasonable cause."). This argument, however, again rests upon Welz's incorrect characterization of his termination being premised solely upon his theft of the golf ball. As is apparent from the record, Welz's dismissal resulted from his actions and attitude surrounding the golfing incident as well as the threatening statement directed at a supervising officer. The hearing officer correctly concluded that "given the particular circumstances involved . . . [d]ismissal is within the range of permissible disciplinary actions for Welz's misconduct."

¶20 As competent evidence exists within the record to support the hearing officer's determination, the trial court correctly determined the hearing officer's determination was not arbitrary and capricious, or an abuse of discretion.

## II. State Law Claims

¶21 Along with his special action petition, Welz brought two separate state law claims: breach of contract and wrongful termination. In its ruling denying relief on Welz's special action petition, the trial court also granted summary judgment against Welz on his state law claims. Welz argues the trial court erred in doing so. We disagree.

¶22 Welz admits the two state law claims present the same basic issue as his special action petition — Lake Havasu City terminated him without cause — and also asserts the same arguments in favor of his special action petition and state law claims. Because the state law claims present the selfsame issue decided by the hearing officer, Welz was collaterally estopped from asserting those claims a second time. *See Hawkins v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 100, 103-04, 900 P.2d 1236, 1239-40 (App. 1995). Moreover, the state law claims amount to a collateral attack on the hearing officer's determination, which is generally not permitted except when it raises a jurisdictional issue, which is not the case here. *See Miller v. Ariz. Corp. Comm'n*, 227 Ariz. 21, 24, ¶ 10, 251 P.3d 400, 403 (App. 2011). Although the trial court did not specifically state the basis for its summary judgment ruling, we may affirm the trial court's decision if it is correct for any reason. *Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App. 1986). Therefore, we affirm the trial court's grant of summary judgment against Welz on his state law claims.

## III. Fraud Allegation

¶23 In his response to Lake Havasu City's motion for summary judgment, Welz claimed his firing was pretextual. Based upon the deposition testimony of a former Lake Havasu City lieutenant (Reynolds) taken a year after Welz's termination hearing during discovery before the federal district court, Welz asserted the police department had a scheme, driven by the need for budgetary cuts, to document his transgressions toward justifying his eventual firing. The trial court considered Welz's theory, but ultimately found he failed to show such a scheme existed.

¶24 Welz now argues that the trial court erred by failing to conduct a trial de novo on the issue and in determining he provided

insufficient evidence to support his fraud theory. *See* Ariz. R. Spec. Acts. 4(f). We disagree.

**¶25** Although Rule 4(f) provides that any triable issue of fact that is raised in a special action "shall be tried subject to special orders concerning discovery," the special action proceeding is not a trial de novo. *Cranmer*, 204 Ariz. at 302, ¶ 12, 63 P.3d at 1039. In a special action, such as this, the only questions to be considered by the trial court are:

> a) whether the hearing officer had failed to exercise discretion which he had a duty to exercise; or to perform a duty required by law as to which he had no discretion; or
>
> b) whether the hearing officer had proceeded or was threatening to proceed without or in excess of jurisdiction or legal authority; or
>
> c) whether the hearing officer's determination was arbitrary and capricious or an abuse of discretion.

*Robertson v. Superior Court*, 136 Ariz. 440, 442, 666 P.2d 540, 542 (App. 1983); Ariz. R.P. Spec. Act. 3. In considering these questions, the "superior court [i]s limited to reviewing the record made before [the hearing officer] and could not hold a trial de novo." *Robertson*, 136 Ariz. at 442, 666 P.2d at 542.

**¶26** Nonetheless, Welz argues that "[w]hen a party presents evidence of a fraud in the proceedings below as part of a special action review, the court is duty bound to order a new hearing." Assuming *arguendo* Welz was entitled to present evidence not seen by the administrative hearing officer to the trial court in its appellate capacity, *see Doria Mining & Eng'g Corp. v. Morton*, 608 F.2d 1255, 1259 (9th Cir. 1979), the trial court properly determined the evidence was insufficient to support his argument he was entitled to a trial de novo before it.

**¶27** Welz argued to the trial court and to this Court that Lake Havasu City committed fraud on the hearing officer by failing to disclose the real motive for his discharge (budgetary concerns), thereby depriving him of a fair hearing. *See* Ariz. R. Civ. P. 60(c)(6); *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42, 257 P.3d 1168, 1179 (App. 2011). He makes this argument even though he had admitted to the conduct the administrative hearing officer determined sufficient to have justified his termination, independent of all else.

¶28        "When a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court, this constitutes a fraud upon the court, and the court has the power to set aside the judgment at any time." *Id.* To obtain relief for fraud on the court, the proponent must prove fraud by clear and convincing evidence. *United States v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011); *see In re Olivas' Estate*, 132 Ariz. 61, 63, 643 P.2d 1031, 1033 (App. 1982).[7] Generally, the proponent must demonstrate more than the "mere nondisclosure of evidence" or perjury by a witness, unless the "perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself." *Estate of Stonehill*, 660 F.3d at 444-45.

¶29        The only evidence presented to support Welz's argument was the deposition testimony of Reynolds. Reynolds testified that in late 2008, he overheard Police Chief Doyle explain the department needed to cut money from the budget due to the economic downturn; tell supervising officers to identify "problem children" and begin "documenting [them] a little bit harder and a little stiffer," with Welz's name being one that was mentioned; and congratulate Sergeant Harrold for "getting Don Welz."

¶30        We agree with the trial court's determination that this testimony, which is inadmissible hearsay, did not prove a fraudulent scheme to fire Welz existed. The testimony did not definitively indicate Welz was made a target. Further, the testimony did not indicate anything inappropriate was being done, but instead suggested that matters that may have prompted more lenient consideration before would no longer be tolerated. Reynolds' testimony is not supported anywhere within the record, and fails to constitute the requisite clear and convincing evidence needed to show a fraud on the court.

¶31        Furthermore, Welz did not demonstrate the alleged nondisclosure was so fundamental as to deprive him of a fair hearing. Lake Havasu City's PR & R provided that termination was a possible sanction for an employee who committed a violation of the PR & R while on disciplinary probation. Welz was on disciplinary probation at the time

---

[7] Arizona Rule of Civil Procedure 60(c) is analogous to Federal Rule of Civil Procedure 60(b). "It is appropriate to look to federal courts' interpretation of federal rules that mirror Arizona rules." *Haroutunian v. Valueoptions, Inc.*, 218 Ariz 541, 548 n.8, ¶ 18, 189 P.3d 1114, 1121 n.8 (App. 2008); *see* Fed. R. Civ. P. 60(b).

the conduct leading to his termination was committed, was given notice of the provisions he was charged to have violated, and has always admitted to that conduct, including during his administrative hearing. Even assuming the department may have also had budget concerns during that period that were not disclosed to him, the basis of his termination was sustainable on its own merits and Welz was not denied the opportunity to fairly contest those charges against him. Therefore, the trial court did not err in declining to grant a trial de novo or in finding Welz failed to provide sufficient evidence of fraud on the hearing officer.[8]

## CONCLUSION

¶32          We find the trial court correctly concluded that the hearing officer's determination was not arbitrary or capricious, or an abuse of discretion, and affirm the trial court's judgment in favor of Lake Havasu City, as well as its ruling against Welz on his state law claims. Both parties request their taxable costs on appeal pursuant to A.R.S. § 12-341. As the prevailing party, we grant Lake Havasu City's request, subject to its compliance with Arizona Rule of Civil Appellate Procedure 21. We deny Welz's request.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

[8] Welz also argues that whether his firing was pretextual was a question of fact, and that the trial court erred by ruling on this issue rather than allowing a jury to resolve it. However, his argument to the trial court was that Lake Havasu City committed fraud on the hearing officer. In that respect, the question is one for the trial court. *See* Ariz. R. Civ. P. 60(c) ("On motion and upon such terms as are just *the court may relieve* a party or a party's legal representative from a final judgment, order or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic) . . . .") (emphasis added).